SUPERIOR PUBLIC RIGHTS, INC. v DEPARTMENT OF NATURAL RESOURCES

1. NAVIGABLE WATERS—GREAT LAKES—SUBMERGED LANDS—USE OF LANDS—PUBLIC HEARINGS—STATUTES.

The Department of Natural Resources may conduct a public hearing on an application for the use of Great Lakes bottomland and on termination of such hearing, and after review of the testimony, a decision shall be made on the merits and the application approved or disapproved (MCLA 322.714; MSA 13.700[14]).

2. ADMINISTRATIVE LAW—PUBLIC HEARINGS—BURDEN OF PROOF.

Administrative agencies may, by rule or decision, allocate burdens of proof in a manner consistent with the legislative scheme being administered; in determining whether a party has carried a burden of proof, no special requirement of a degree of persuasion is generally applied but the agency findings of fact must be supported by evidence or be based on reasonable inferences of fact.

3. NAVIGABLE WATERS—PUBLIC TRUST LANDS—PRIVATE USE—PERMITS—BURDEN OF PROOF.

An applicant requesting permission to use Great Lakes submerged public trust lands for private commercial purposes has the burden of establishing that he is entitled to the permit.

REFERENCES FOR POINTS IN HEADNOTES

[1–3, 5] 2 Am Jur 2d, Administrative Law § 412 et seq.

78 Am Jur 2d, Waters §§ 45, 51.

[2] 2 Am Jur 2d, Administrative Law § 452.

[3, 5, 7–9, 11] 78 Am Jur 2d, Waters §§ 390, 392, 400 et seq.

[4] 4 Am Jur 2d, Appeal and Error § 76.

[6] 16 Am Jur 2d, Constitutional Law § 562.

[8] 2 Am Jur 2d, Administrative Law §§ 455, 456.

[10–12] 63 Am Jur 2d, Public Lands § 65 et seq.

72 Am Jur 2d, States, Territories, and Dependencies § 66 et seq.

[13] 20 Am Jur 2d, Costs §§ 10, 87, 94.

61 Am Jur 2d, Pollution Control §§ 15, 183 et seq.

4. Appeal and Error—Findings of Fact—Clear Error.

A trial court's findings of fact will not be disturbed on appeal unless they are clearly erroneous.

5. Navigable Waters—Constitutional Law—Due Process—Great Lakes—Submerged Lands—Use of Lands—Public Hearings —Governmental Protection of Interests.

Constitutional due process rights are not violated by failing to hold a public hearing before granting an applicant the right to use additional Great Lakes bottomland for private purposes; due process is not an appropriate vehicle to use for the protection of those rights, and in such a situation citizens must rely on their representative government to protect their interests.

6. Constitutional Law—Public Trust Lands—Due Process— Property Interests—Published Notice.

Due process is flexible and calls for such procedural protection as the particular situation demands, depending upon the importance of the interests involved and the nature of the subsequent proceedings; due process is satisfied where the property interest of any one citizen in public trust land is limited and a project involving such land acquires notoriety by virtue of newspaper articles and published notice by the United States Army Corps of Engineers.

7. Navigable Waters—Great Lakes—Submerged Lands—Private Use—Public Trust—Statutes.

The Great Lakes Submerged Lands Act authorizes the state to permit the private use of public trust lands where the private or public use of such lands and waters will not substantially affect the public use thereof, and the Department of Natural Resources, after finding that the public trust in the waters will not be impaired or substantially affected, is authorized to enter into agreements pertaining to these lands and waters after approval of the administrative board (MCLA 322.701 et seq.; MSA 13.700[1] et seq.).

8. Navigable Waters—Public Trust Lands—Department of Natural Resources—Authorization of Use.

The Department of Natural Resources is not required to find that every private use of public trust lands is in itself beneficial to the public interest before authorizing a use (MCLA 322.705; MSA 13.700[5]).

9. Navigable Waters—Public Trust Lands—Use of Lands—Evidence—Notoriety—Hearings.

Sufficient evidence was weighed and analyzed by the Department

of Natural Resources to render a fair decision in granting applications for the use of public trust lands where in addition to a report of the United States Corps of Engineers the department conducted hearings for nine days prior to granting the applications and the record showed sufficient evidence was considered.

10. NAVIGABLE WATERS—PUBLIC TRUST LANDS—USE AND OCCUPANCY —CONSIDERATION—FAIR MARKET VALUE.

The consideration received by the state in exchange for granting the right to use and occupy public trust lands shall be not less than the fair cash market value of the lands determined as of the date of the filing of an application (MCLA 322.705; MSA 13.700[5]).

11. NAVIGABLE WATERS—GREAT LAKES—SUBMERGED LANDS—MARKET VALUE.

The Great Lakes Submerged Land Act restricts the class of applicants who may request the use of bottomland to riparian or littoral owners of property touching or situated opposite the unpatented land or water area over patented lands applied for or an occupant of said land; it is open to question as to whether these lands have any "market" value at all, in view of the limited market for bottomlands.

12. PROPERTY—VALUE OF PROPERTY—FAIR MARKET VALUE—DURESS.

Duress is not an appropriate factor for consideration in assessing the market value of property.

13. COSTS—ENVIRONMENTAL PROTECTION ACT—JUDGE'S DISCRETION— ABUSE OF DISCRETION—STATUTES.

Costs may be apportioned to the parties in actions under the Michigan environmental protection act if the interests of justice so require; the award of costs and attorney fees in a case brought under the act is within the broad and unfettered discretion of the trial judge, which must be recognized and exercised; upon review, the Court of Appeals looks only to see if such discretion has been exercised, and, if so, abused (MCLA 691.1203[3]; MSA 14.528[203] [3]).

Appeal from Ingham, Donald L. Reisig, J. Submitted November 2, 1977, at Lansing. (Docket No. 28293.) Decided December 5, 1977.

Complaint by Superior Public Rights, Inc.,

against the Department of Natural Resources, Upper Peninsula Generating Company and Lake Superior and Ishpeming Railroad seeking a declaratory judgment that agreements which permitted the use of public trust lands for private and commercial use are invalid. Judgment for defendants. Plaintiff appeals. Affirmed in part, reversed in part and remanded.

*Peter W. Steketee, James M. Olson, Lewis A. Smith,* and *Dean A. Robb, Sr.,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Jerome Maslowski* and *Custis G. Beck,* Assistants Attorney General, for Department of Natural Resources.

*Foster, Swift, Collins & Coey, P. C., Clancey, Hansen, Davidson, Chilman & Graybill,* and *Loomis, Ewert, Ederer, Parsley, Davis & Gotting,* for Upper Peninsula Generating Company.

Before: J. H. GILLIS, P. J., and BASHARA and H. L. HEADING,* JJ.

J. H. GILLIS, P. J. Plaintiff, Superior Public Rights, Inc.[1] (hereinafter referred to as SPRI) commenced this action on September 24, 1973, pursuant to the Michigan Environmental Protection Act. MCLA 691.1201 *et seq.;* MSA 14.528(201) *et seq.*

Plaintiff's suit seeks to invalidate agreements

---

* Detroit Recorder's Court judge, sitting on the Court of Appeals by assignment.

[1] Plaintiff, Superior Public Rights, Inc., is a Michigan non-profit corporation. All of its incorporators and members are residents of Marquette County. They actually use the trust land, which is the subject matter of this lawsuit, for fishing, boating, swimming and other recreational purposes.

which permit the private use of public trust land for railroad and coal unloading facilities. Plaintiff also seeks to nullify an easement agreement which permits the expansion of an electrical power generating plant on adjacent public trust lands.

The trust land in question lies within Presque Isle Harbor near Marquette, Michigan.

The defendants in the instant action include 1) the State of Michigan Department of Natural Resources (hereinafter referred to as DNR), which is responsible for the maintenance and preservation of the trust land, 2) the Upper Peninsula Generating Company (hereinafter referred to as GENCO), which applied for, and received an easement through public trust land from defendant DNR for the construction of underground intake/discharge pipes for its generating facility, and 3) the Lake Superior and Ishpeming Railroad (hereinafter referred to as LS&I Railroad), which applied for, and received a permit from defendant DNR for the use of over 40 acres of public trust land pursuant to the Great Lakes Submerged Lands Act. MCLA 322.701 *et seq.;* MSA 13.700(1) *et seq.*

A brief history of the bottomland in question is necessary for an understanding of the issues raised on appeal.

It appears that LS&I Railroad constructed two docks upon the trust land in the late 1800's and early 1900's to facilitate the loading and unloading of coal and iron ore transported by the railroad.

In spite of its continued use of these docks over the years, LS&I Railroad apparently never obtained formal permission to occupy the trust land which supports them. Indeed, it is not clear that any statute existed providing for state authorization of such occupancy until 1955. That year the

Legislature passed the Great Lakes Submerged Lands Act, MCLA 322.701 *et seq.;* MSA 13.700(1) *et seq.* The stated purpose of the act was to give the Department of Natural Resources the power to grant, convey or lease unpatented Great Lakes bottomland belonging to the State of Michigan or held in trust by it and "to permit the private and public use of waters over submerged patented land and the making of agreements limiting and regulating the use thereof, and to provide for the disposition of revenue derived therefrom and to provide penalties" for violations of the act. Shortly after passage of the Great Lakes Submerged Lands Act, a study of the Upper Peninsula was conducted to determine if there were any illegal encroachments on state-owned bottomland. The only encroachments found in upper Presque Isle Harbor were the two docks operated by LS&I Railroad.

The unauthorized occupation was legitimized by an agreement executed between defendants DNR and LS&I Railroad,[2] which is now part of the subject matter of this lawsuit.

Defendant, LS&I Railroad, sought to expand these facilities with the installation of a coal unloader, and applied for the use of an additional .37 acre of bottomland for this purpose. This application was granted by defendant DNR pursuant to the Great Lakes Submerged Lands Act, *supra,* during the pendency of the instant action in 1975. Plaintiff SPRI amended its complaint and chal-

---

[2] The 1971 "Agreement for Use of Great Lakes Bottomland" between the DNR and the LS&I Railroad encompassed a total of 42.7 acres of submerged land including that directly beneath the docks. According to the then chief of the DNR's Submerged Lands Management Section, George Taack: "The area that was under agreement was for the purpose of using it for the surface, for the movement of goods by ship and it was intended to grant them the right to maneuver their boats, moor them, load them, unload them, whatever they were doing in the manner that they had been doing since the early 1900's."

lenged the validity of this agreement as well as the first agreement that was executed by the parties in 1971.

Defendant GENCO operates a power generating plant situated on the Dead River near the Lake Superior shoreline.

All of GENCO's power generating units require cooling water for the purpose of condensing steam after it has been used to drive the unit's turbine. A "once through" cooling system is employed, meaning that water is drawn in from a natural source, is used to condense the steam and is then discharged back into the source.

Defendant GENCO sought to expand its generating capacity to meet the demands of the mining industry in the area. In order to expand its capacity, a new intake/discharge system was necessary in order to provide the new and existing generating units with sufficient cooling water. The current system, which used the waters of the Dead River for cooling purposes, was inadequate from both an environmental and an operational standpoint.[3] Hence, defendant GENCO applied for an easement across state-owned trust land in order to run a new intake/discharge cooling system into Lake Superior.

Before it could construct and operate its new intake and discharge system, defendant GENCO

---

[3] It appears that during periods when the flow through the Dead River is restricted (either due to seasonal variations or due to the operation of hydroelectric power plants located upstream) GENCO's requirements for cooling waters would reverse the flow of the Dead River drawing in water from the harbor. On occasion sand bars would block the mouth of the Dead River requiring routine maintenance dredging to keep the mouth of the Dead River open. From an environmental standpoint, it was believed that the use of the Dead River waters, under the circumstances described above, created a barrier to the migration of anadromous fish up the Dead River to spawn and to the migration of fingerlings into Lake Superior after hatching.

had to obtain a series of permits from the Army Corps of Engineers and from various divisions of defendant DNR. The Army Corps of Engineers compiled a comprehensive environmental impact statement dated March 28, 1973, which concluded that the proposed system met Federal pollution standards, and that no serious harm would befall the environment from the construction of the proposed system. Defendant DNR then granted an easement to defendant GENCO for the use of state-owned trust land for the project.

Plaintiff then commenced this action in circuit court challenging the validity of the 1971 land use agreement between defendants, LS&I Railroad and DNR, and the aforementioned easement agreement executed between defendants, GENCO and DNR. As noted earlier, the complaint was later modified to also challenge the 1975 land use agreement between defendants, LS&I Railroad and DNR.

The circuit court issued an opinion and a final judgment in favor of all defendants on March 24, 1976. Plaintiff appeals from that judgment as a matter of right.

Plaintiff first contends that the burden of proof was improperly thrust upon the plaintiff during the 1975 DNR hearings concerning defendant LS& I Railroad's application for the use of additional trust land, and therefore the trial court erred in adopting the findings made at the hearing.

MCLA 322.714; MSA 13.700(14), provides that the Department of Natural Resources *may* conduct a public hearing on an application for the use of Great Lakes bottomland. In addition, Administrative Rule 15, being 1967 AACS, R281.915, promulgated pursuant to the rule-making authority granted by MCLA 322.709; MSA 13.700(9), provides, in part:

"The department upon its own motion, or upon the request of any interested party, may hold a hearing before consideration of any application for a deed, lease, agreement, boundary certificate, or permit to fill or dredge unpatented bottomland or water area over patented bottomland. Any hearing under these rules shall be conducted in accordance with Act No. 197 of the Public Acts of 1952, as amended, being sections 24.101 to 24.110 of the Compiled Laws of 1948. * * * On termination of the hearing, and after review of the testimony, a decision shall be made on the merits and the application approved or disapproved, and thereafter if approved, shall be submitted to the conservation commission and state administrative board for final disposition."

However, neither the Great Lakes Submerged Lands Act nor the rules promulgated under MCLA 322.709; MSA 13.700(9) by the DNR, nor the Administrative Procedures Act allocates the burden of proof between the parties at such a hearing.

"Agencies may, by rule or decision, allocate burdens of proof in a manner consistent with the legislative scheme being administered. Thus, it is proper for the agency to impose the burden of producing evidence on a party having superior access to the relevant facts. [Citing *Michigan Tool Co v Employment Security Commission,* 346 Mich 673; 78 NW2d 571 (1956).]

"In determining whether a party has carried a burden of proof, no special requirement of a degree of persuasion is generally applied. The agency finding of fact must be supported by evidence, and reflect a judgment that the evidence preponderates in favor of the finding, but it may be based on reasonable inferences of fact. [Citing, by way of example, *Zytkewick v Ford Motor Co,* 340 Mich 309; 65 NW2d 813 (1954).]" Crampton, Holmes, *The New Michigan Administrative Procedures,* Institute of Continuing Legal Education, 1970, pp 121–122.

In the instant matter, LS&I Railroad requested an agency, the DNR, to issue a permit to allow it to use public trust lands for private commercial purposes. Under such circumstances, the applicant had the burden of establishing that it was entitled to the permit. An examination of the record reveals that in conjunction with its application to the DNR, defendant LS&I Railroad submitted all the information required by MCLA 322.704; MSA 13.700(4), and the applicable administrative rules. 1967 AACS, R 281.902–281.906. A reading of the hearing examiner's opinion also reveals that defendant, LS&I Railroad, supplied the examiner with relevant data about the project. There is nothing in the record to indicate that the burden of proof was ever thrust upon plaintiff at the administrative level.

The trial court, in its opinion, clearly indicated that it made a *de novo* interpretation of the evidence surrounding LS&I's application for use of the land in question, and concluded that LS&I Railroad had the burden of proof at the DNR hearing. This Court will not disturb the findings of fact made by the trial court unless they are clearly erroneous. *City of Muskegon v Lipman Investment Corp,* 66 Mich App 378, 383; 239 NW2d 375 (1976).

Accordingly, we find that the defendant, LS&I Railroad, had the burden of proof at the administrative level.

Plaintiff next contends that defendant, DNR, deprived plaintiff's members of their constitutional due process rights by failing to hold a public hearing before granting defendant, LS&I Railroad, the right to use additional bottomland for the construction of a coal unloader.

A two-part analysis is required to determine the validity of plaintiff's due process claim.

"In analyzing due process claims, the United States Supreme Court first determines '[w]hether any procedural protections are due' and then decides 'what process is due.' *Morrissey v Brewer,* 408 US 471; 92 S Ct 2593; 33 L Ed 2d 484 (1972).

"In determining whether any procedural protection is required, the Court considers 'whether the nature of the interest is one within the contemplation of the "liberty or property" language of the Fourteenth Amendment' *Morrisey v Brewer, supra,* p 481." *Dow v Michigan,* 396 Mich 192, 202–203; 240 NW2d 450 (1976).

We must first determine whether or not the plaintiff, representing citizens of this state, is entitled to any procedural protection when the state allows for the private use of lands held in trust for the general public.

Plaintiff cites a long line of cases in support of its contention that the public should receive notification under the circumstances of this case. However, the cases cited by plaintiff deal with the deprivation of *individual* rights of property and liberty.[4] In the instant matter, we are concerned with the rights of every citizen of this state since the land in question is held in trust by the state for the benefit of the general public.

Although the property rights of the citizens of this state in public trust lands may be superior to their rights in public property in general, due process is not an appropriate vehicle to use for the protection of those rights. In such a situation, the citizens must rely on their representative government to protect their interests.

Even if this Court were to rule that plaintiff's

---

[4] The cases cited by plaintiff include: *Fuentes v Shevin,* 407 US 67; 92 S Ct 1983; 32 L Ed 2d 556 (1972), *Sniadach v Family Finance Corp,* 395 US 337; 89 S Ct 1820; 23 L Ed 2d 349 (1969), *North Georgia Finishing, Inc v Di-Chem, Inc,* 419 US 601; 95 S Ct 719; 42 L Ed 2d 751 (1975).

members were entitled to notice and a right to be heard at a hearing before the state could allow the private use of trust lands, there would be no error in the instant matter. The notice given to the public in the case at bar complied with the requirements set forth in the *Dow* case, *supra.*

"Addressing the question of what process is due, we note that 'due process is flexible and calls for such procedural protections as the particular situation demands.' [Citing *Morrissey v Brewer,* 408 US 471; 92 S Ct 2593; 33 L Ed 2d 484 (1972).] 'The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings.' *Boddie v Connecticut,* 401 US 371, 378; 91 S Ct 780; 28 L Ed 2d 113 (1971)." 396 Mich 192, 204–205.

Given the flexibility of due process requirements, the limited property interest of any one citizen in public trust land, and the notoriety of the project by virtue of newspaper articles and published notice by the United States Army Corps of Engineers, it is this Court's opinion that due process was satisfied.

Plaintiff also claims that defendant DNR's failure to comply with MCLA 322.714; MSA 13.700(14), resulted in denying interested parties due process of law. A careful reading of the aforementioned statute indicates that it only applies to the construction of artificial waterways which connect into the Great Lakes.

Hence, we find no deprivation of due process rights in conjunction with defendant DNR's approval of LS&I Railroad's application for the use of additional bottomland.

Plaintiff further alleges that defendant DNR failed to apply appropriate standards and make

necessary findings of fact based upon sufficient evidence in determining whether or not to grant defendant LS&I Railroad's and GENCO's applications for use of the bottomland.

Plaintiff first contends that the standards set forth in MCLA 322.702, 703, 705; MSA 13.700(2), (3), (5), are in conflict with the common-law public trust doctrine and are therefore void. We disagree.

"The control of the State for the purposes of the trust can never be lost, *except as to such parcels as are used in promoting the interests of the public therein, or can be disposed of without any substantial impairment of the public interest in the lands and waters remaining.* It is only by observing the distinction between *a grant of such parcels for the improvement of the public interest, or which when occupied do not substantially impair the public interest in the lands and waters remaining,* and a grant of the whole property in which the public is interested, that the language of the adjudged cases can be reconciled. * * * *The State can no more abdicate its trust over property in which the whole people are interested, like navigable waters and soils under them, so as to leave them entirely* under the use and control of private parties, *except in the instance of parcels mentioned for the improvement of the navigation and use of the waters or when parcels can be disposed of without impairment of the public interest in what remains,* than it can abdicate its police powers in the administration of government and the preservation of the peace." *Illinois Central R Co v People of the State of Illinois,* 146 US 387, 453; 13 S Ct 110; 36 L Ed 1018 (1892). (Emphasis supplied.)

The *Illinois Central R Co* case, *supra,* expressly authorizes the state to permit the private use of public trust lands when 1) the private use will improve the public trust, or 2) the private use will not substantially impair the trust lands and waters that remain.

The Great Lakes Submerged Lands Act, *supra,* also authorizes the state to commit public trust lands to private use.

"The lands covered and affected by this act are all of the unpatented lake bottomlands and unpatented made lands in the Great Lakes, including the bays and harbors thereof, belonging to the state or held in trust by it, including those lands which have heretofore been artificially filled in. The waters covered and affected by this act are all of the waters of the Great Lakes within the boundaries of the state. *This act shall be construed so as to preserve and protect the interests of the general public in the aforesaid lands and waters and to provide for the sale, lease, exchange or other disposition of unpatented lands and the private or public use of waters over patented and unpatented lands and to permit the filling in of patented submerged lands whenever it is determined by the department of conservation that the private or public use of such lands and waters will not substantially affect the public use thereof for hunting, fishing, swimming, pleasure boating or navigation or that the public trust in the state will not be impaired by such agreements for use, sales, lease or other disposition.*

\* \* \*

"The department of conservation, hereinafter referred to as the 'department', *after finding that the public trust in the waters will not be impaired or substantially affected,* is hereby authorized to enter into agreements pertaining to waters over and the filling in of submerged patented lands, or to lease or deed unpatented lands, after approval of the state administrative board." MCLA 322.702; MSA 13.700(2), MCLA 322.703; MSA 13.700(3). (Emphasis supplied.)

The tests set forth in *Illinois Central R Co, supra,* and the Great Lakes Submerged Lands Act, *supra,* are nearly identical, and go about protecting public trusts in a similar manner.

Accordingly, we find no inconsistency between the tests.

Plaintiff next seeks to invoke MCLA 322.705; MSA 13.700(5), and compel defendant DNR to make a finding that the proposed private use of public trust lands by the defendants is within the "public interest".

*"Should the department determine that it is in the public interest* to grant an applicant a deed or lease to such lands or enter into an agreement to permit use and improvements in the waters or to enter into any other agreement in regard thereto, the department shall determine the amount of consideration to be paid to the state by such applicant for the conveyance or lease of unpatented lands.

"(a) The department may permit, by lease or agreement, the filling in of patented and unpatented submerged lands and permit permanent improvements and structures after finding that the public trust will not be impaired or substantially injured." MCLA 322.705; MSA 13.700(5). (Emphasis supplied.)

Plaintiff interprets the aforementioned section to require the defendant DNR to find that every private use of public trust lands is in itself beneficial to the public interest before authorizing the use.

Such an interpretation is clearly erroneous.

MCLA 322.702 imposes standards that defendant DNR must follow when determining whether or not to allow the private use of public trust lands. While MCLA 322.703; MSA 13.700(3) and MCLA 322.705; MSA 13.700(5) reiterate these standards in shortened form, they do so for other purposes.

MCLA 322.703; MSA 13.700(3) authorizes the DNR to enter into agreements and make dispositions of public trust land. MCLA 322.705; MSA

13.700(5) prescribes the formula to be used in determining the consideration to be received by the state for the private use of trust lands.

A careful review of the statutes at issue reveals that the Legislature did not intend to impose another "public interest" test in addition to the requirements enumerated in § 2 of the statute.

Such an interpretation is consistent with the "public trust doctrine" set forth in *Illinois Central R Co, supra.*

Therefore, we rule that MCLA 322.702; MSA 13.700(2) sets forth the requirements to be considered by the DNR when determining whether or not to allow the private use of public trust lands. MCLA 322.705; MSA 13.700(5) imposes no additional requirements.

Plaintiff's final argument in respect to this issue alleges that defendant DNR failed to analyze sufficient evidence to render a fair decision on the applications made by the other defendants for the private use of public trust lands. Plaintiff alleges that defendant DNR improperly delegated its fact-finding duties by relying upon the environmental impact statement prepared by the United States Corps of Engineers. Plaintiff goes on to suggest that this was the only evidence considered by the DNR when it was weighing defendants' applications for private use of the trust lands.

Plaintiff offers no evidence to support this contention. Defendant DNR claims additional evidence was considered before the applications were granted. The DNR conducted hearings for nine days in respect to LS&I Railroad's application for use of the trust lands. The trial court concluded that the DNR weighed sufficient evidence in granting the applications.

Based upon this record we find that the DNR

weighed sufficient evidence in granting defendants' applications for use of the public trust lands.

Plaintiff next challenges the sufficiency of consideration received by the state in exchange for granting defendants, GENCO and LS&I Railroad, the right to use and occupy public trust lands.

"*The consideration to be paid to the state or the conveyance or lease of unpatented lands by such applicant shall be not less than the fair, cash market value of the lands determined as of the date of the filing of such application,* minus any improvements placed thereon but in no case shall the sale price be less than 30% of the value of the land. In determining the fair, cash market value of the lands applied for, the department may give due consideration to the fact that such lands are connected with the riparian or littoral property belonging to the applicant, if such is the case, and to the uses, including residential and commercial, being made or which can be made of said lands." MCLA 322.705; MSA 13.700(5). (Emphasis supplied.)

As noted by MCLA 322.704; MSA 13.700(4), the Great Lakes Submerged Lands Act restricts the class of applicants who may request the use of bottomland to "riparian or littoral owner or owners of property touching or situated opposite the unpatented land or water area over patented lands applied for or an occupant of said land". With the limited market for bottomlands, it is open to question whether the lands have any "market" value at all.

While plaintiff does not contest the method of computation used in the instant matter, it argues that the property rights acquired by defendants, GENCO and LS&I Railroad, are of much greater value since they are needed to overcome a bottleneck to mining expansion.

However, plaintiff's approach is inappropriate to

determining the fair, cash market value. In the related area of taxation, the courts of this state have held that duress is not an appropriate factor for consideration in assessing the market value of property.

"[T]he words 'cash value' as defined by MCLA 211.27; MSA 7.27 is the usual selling price that could be obtained at the time of assessment, but not the price that could be obtained at a forced or auction sale." *Helin v Grosse Pointe Township,* 329 Mich 396, 403; 45 NW2d 338 (1951).

If stripped of its argument that the state should exercise economic duress over the parties, plaintiff has no real argument concerning the value of the consideration received.

Accordingly, we rule the consideration received by the state for the use of the trust lands was the fair cash market price in accordance with MCLA 322.705; MSA 13.700(5).

Plaintiff finally claims that the trial court erred in failing to assess costs and by ruling that MCLA 691.1203(3); MSA 14.528(203)(3) does not authorize the court to award attorney fees. We agree.

The Michigan Environmental Protection Act states that:

"Costs may be apportioned to the parties if the interests of justice require."

This Court in *Taxpayers & Citizens in the Public Interest v Department of State Highways,* 70 Mich App 385; 245 NW2d 761 (1976), interpreted this section to authorize the award of attorney fees if the statutory test was met.

"The authority for an award of fees and costs, includ-

ing taxable attorney fees and reasonable expert witness fees, is statutory. MCLA 600.2405; MSA 27A.2405, MCLA 600.2164; MSA 27A.2164. It is denoted in MCLA 600.2401; MSA 27A.2401 that '[e]xcept as otherwise provided by statute, the supreme court shall by rule regulate the taxation of costs'. The controlling court rule is GCR 1963, 526.1:

" 'In any action or proceeding, costs shall be allowed as of course to the prevailing party, except when express provision therefor is made either in a statute or in these Rules, *or unless the court otherwise directs,* for reasons stated in writing and filed in the cause.' Falling within the 'except when express provision * * * in a statute' supervention is the appropriate section of the Environmental Protection Act (EPA), MCLA 691.1203(3); MSA 14.528(203)(3): 'Costs *may* be apportioned to the parties if the interests of justice require.'

"Construed in concert, as they must be, these provisions yield one indisputable principle: the award of costs and fees in cases such as this is within the broad and unfettered discretion of the trial judge, a discretion that must, however, be recognized and exercised. We only look to see if such discretion has been exercised, and, if so, abused." 70 Mich App 385 at 387, 388.

A review of the record reveals that the trial court failed to determine if the "interests of justice" require that costs be apportioned.

The trial court also expressly excluded attorney fees when it considered apportioning costs. Accordingly, the case must be remanded to the trial court to allow it to apply the appropriate standards in determining whether or not costs should be apportioned. The other issues raised on appeal do not merit discussion by this Court.

Affirmed in part; reversed in part for proceedings consistent with this opinion. No costs, a public question being involved. We retain no further jurisdiction.