**WEST MICHIGAN ENVIRONMENTAL ACTION COUNCIL, INC., Plaintiff,**

v.

**NUCLEAR REGULATORY COMMIS-SION, et al., Defendants.**

No. G58–73 CA7.

United States District Court,
W.D. Michigan, S.D.

Aug. 17, 1983.

Peter W. Steketee, Grand Rapids, Mich., for plaintiff.

John A. Smietanka, U.S. Atty., Grand Rapids, Mich., James A. Fitzgerald, Acting Sol., Beverly S. Segal, Mark E. Chopko, Attys., U.S. Nuclear Regulatory Com'n, Washington, D.C., Jon P. Bachelder, Grand Rapids, Mich., Consumers Power Legal Dept., Judd L. Bacon, Jackson, Mich., for defendants.

OPINION AND ORDER ON DEFEND-
ANTS' MOTIONS TO DISMISS AND
PLAINTIFF'S MOTION FOR SUB-
STANTIAL COSTS AND ATTOR-
NEYS' FEES

MILES, Chief Judge.

Plaintiff West Michigan Environmental Action Council, Inc. (WMEAC) initiated this action in 1973 against the Atomic Energy Commission (AEC), predecessor to the Nuclear Regulatory Commission (NRC), its commissioners, and Consumers Power Company (Consumers) to challenge an operating license amendment issued to Consumers by the AEC authorizing the increased use of recycled plutonium in mixed oxide fuel rods at the Big Rock Point Nuclear Plant near Charlevoix, Michigan. In particular, the plaintiff council sought declaratory relief to make the provisions of the National Environmental Policy Act (NEPA), 43 U.S.C. § 4321 et seq. (1976), which require preparation of an Environmental Impact Statement (EIS), applicable to Consumers' expanded use of plutonium at the facility. Furthermore, the plaintiff asked that the court declare the Atomic Energy Act (AEA), 42 U.S.C. 2011 et seq. (1976), to require the holding of public hearings on the question of increased plutonium levels. Related injunctive relief was also requested.

The court denied the plaintiff's motion for a preliminary injunction. Consumers also represented to the court that it would not take any action under the challenged license amendment, Amendment No. 4, without prior notice to the court and plaintiff.

In April 1973, the AEC published a notice of hearing in the Federal Register, 39 Fed. Reg. 9104 (1973), and gave the plaintiff an opportunity to be heard on Amendment No. 4 at the hearing. By February 1974, the defendant AEC announced that it planned to prepare a General Environmental Statement on the Use of Recycled Plutonium in Mixed Oxide Fuel in Light Water Cooled Reactors (GESMO). A year later the NRC terminated the hearings on the Big Rock facility because Consumers had sought a declaratory order from the NRC on the effectiveness of Amendment No. 4. In its order, the Commission first concluded that sound discretion dictated that NEPA's requirements be applied to the use of mixed oxide fuel and that these could be satisfied by a discrete EIS instead of waiting for the completion of the GESMO. Second, it determined that Amendment No. 4 could not be used until NEPA's requirements were met and a decision was reached in the pending hearing. In particular, the NRC indicated that if Consumers chose "to prepare an environmental report, the NRC staff [would] then prepare draft and final environmental impact statements, and the Licensing Board [could] resume the hearing: . . . ." *In re Consumers Power Company (Big Rock Point Nuclear Plant),* 2 N.R.C. 190–91 (1975). Consumers has yet to undertake the preparation of the necessary EIS.

Now before the court are motions to dismiss on behalf of the NRC and Consumers in addition to plaintiff WMEAC's motion for substantial costs and attorneys' fees.

In their motions to dismiss, the defendants argue that the controlling issues of this case have become moot. The Constitution confines the judicial power of the United States to specified "cases" or "controversies." U.S. Const. art. III. For a lawsuit to be cognizable in federal court, it "must be definite and concrete, touching the legal relations of parties having adverse legal interests . . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971) (*per curiam*) (quoting *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937)). The plaintiff must be confronted with continuing harm, or a "significant prospect of future harm" to avoid the consequences of the mootness doctrine. L. Tribe, *American Constitutional Law* 63 (1978).

■ In its original complaint the plaintiff sought declaratory and injunctive relief because there had been no hearing and no EIS filed with respect to the use of mixed oxide fuel at Big Rock. The NRC ruled in 1975, however, that an EIS would have to be filed and public hearings would have to be conducted. Moreover, defendant Consumers has not even initiated this process by preparing an environmental report for the NRC. These determinations of the NRC constitute the relief which the plaintiff was originally requesting.

Under these circumstances, the court sees no controversy which presently exists between the parties. Although the plaintiff contends that the NRC may later dismiss the pending administrative hearing or rescind its order requiring an EIS, such a claim is based purely on speculation. This contingency certainly does not amount to a significant likelihood of future harm. Moreover, any alteration of NRC's prior orders are a matter of public record. The change would be subject to public comment and judicial review. Additionally, defendant NRC is entitled to the presumption that it will act lawfully. *See Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). The present relationship between the plaintiff council and the defendants is governed by the NRC determinations. These rulings have afforded the plaintiff the relief which it was originally seeking. Should the NRC's position change, the plaintiff's interest will be fully protected by the administrative process.

■ This case does not involve a short-term administrative order the subject of which is an issue "capable of repetition, yet evading review." *Carroll v. President and Commissioners of Princess Anne,* 393 U.S. 175, 178–79, 89 S.Ct. 347, 350, 21 L.Ed.2d 325 (1968) (quoting *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911)). Moreover, it would appear that the defendants have voluntarily ceased the objectionable activity. For voluntary cessation to serve as a ground for mootness, it must be clear that the "allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Phosphate Export Association,* 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968). Consumers' Executive Director of Nuclear Activities, Frederick W. Buckman, has submitted an affidavit that the company does not intend to seek perfection of Amendment No. 4, that it has exhausted its existing stockpile of mixed oxide fuel, and that it plans to discharge all such remaining fuel. He also related that there are "no domestic sources of mixed oxide fuel fabricated for commercial use in a reactor such as the one at Big Rock Point." Buckman January 25, 1982, Affidavit at 2. These statements, which the plaintiff does not dispute, taken together with the NRC rulings, establish that it cannot reasonably be expected that Consumers will attempt to use increased levels of mixed oxide fuels without filing an environmental report. Moreover, the administrative process will ensure that the plaintiff will be given an opportunity to be heard. Therefore, the motions to dismiss must be granted.

■ The plaintiff again seeks attorneys' fees in the instant action. For the reasons set out in the court's June 19, 1974, opinion, the motion must be denied. The court does not believe that the law has changed to afford the plaintiff the right to recover such fees, and there has been absolutely no showing of "bad faith" which would entitle it fees. The bald allegation that the defendants tried to "sneak through approval of the first commercial use of recycled plutonium in a deliberate, knowing violation of NEPA and the Atomic Energy Act" is insufficient to support such a claim of bad faith.

■ One new ground upon which the plaintiff relies for attorneys' fees is the Michigan Environmental Protection Act, Mich.Comp.Laws Ann. § 691.1203(3) (West Supp.1982–83); *Superior Public Rights, Inc. v. State,* 80 Mich.App. 72, 89–90, 263 N.W.2d 290, 298 (1977). The relief which the plaintiff sought and received in this lawsuit is based exclusively on federal law. Awarding of attorneys' fees, therefore, is

also a question of federal law. *Joseph v. Adams,* No. 76–40076, slip op. at 5 (E.D. Mich. Dec. 1, 1981) (citing *Signorile v. Quaker Oats Co.,* 499 F.2d 142, 144 (7th Cir.1974)). Having determined that the plaintiff has no right to attorneys' fees under federal law, the instant motion must be denied.

### ORDER

Based on the above discussion,

IT IS HEREBY ORDERED that the defendants' motions to dismiss are GRANTED;

IT IS FURTHER ORDERED that the plaintiff's motion for attorneys' fees is DENIED;

IT IS FURTHER ORDERED that the complaint be DISMISSED.

IT IS SO ORDERED.