DAFTER TOWNSHIP v REID

Docket No. 67943. Submitted October 5, 1983, at Manistique.—Decided December 20, 1983. Leave to appeal applied for.

Edward G. Reid and his wife, Elaine Reid, own 43.6 acres of property in Dafter Township in Chippewa County. They sought and obtained from the Department of Natural Resources a solid waste disposal area construction permit authorizing the construction of a solid waste disposal area on their property. Dafter Township filed a complaint against the Reids and against the director of the Department of Natural Resources in Chippewa Circuit Court seeking to set aside the construction permit on the ground that the permit was issued in violation of the Solid Waste Management Act and to enjoin the operation of the solid waste disposal area because its operation would be likely to pollute, impair, or destroy the single source aquifer for the Dafter Township area in violation of the Michigan environmental protection act. The court, Robert C. Livo, J., ruled: (1) that before the DNR could issue an operating license for the Reid site, it should first determine that the site conformed to a published site selection plan approved by the DNR; (2) that construction of the solid waste disposal area, as authorized by the DNR, would not be likely to pollute, impair, or destroy the natural resources; and (3) that operation of the disposal area, if built to the specifications approved by the DNR, would violate the Michigan environmental protection act unless there was confirmation of adequate clay sealer and further evaluation of possible uplift. The court ordered that the disposal area could not be operated until a study or tests established to the DNR's satisfaction that operation of a disposal area on the Reid site complied with the rules promulgated pursuant to the Solid Waste Management Act. Finally, the court ruled that no costs

REFERENCES FOR POINTS IN HEADNOTES

[1] 61A Am Jur 2d, Pollution Control § 246.

[2] 20 Am Jur 2d, Costs § 73.

[3] 61A Am Jur 2d, Pollution Control § 47.

Validity, construction, and application of statutes requiring assessment of environmental information prior to grants of entitlements for private land use. 76 ALR3d 388.

or attorney's fees would be assessed since no party prevailed in full. Plaintiff appealed that portion of the trial court's judgment which held that the Solid Waste Management Act does not prohibit the DNR from issuing a solid waste disposal area construction permit in an area for which no solid waste management plan has yet been approved and the denial of costs and attorney's fees under the environmental protection act. Defendants Reid cross-appealed, challenging the trial court's decision not to grant them costs and attorney's fees. Defendant Director, Department of Natural Resources, cross-appealed the trial court's determination that the Solid Waste Management Act requires the DNR to approve a site selection plan before issuing a Type II solid waste disposal area operating license. *Held:*

1. The Solid Waste Management Act does not prohibit the DNR from issuing a solid waste disposal area construction permit in an area for which no solid waste management plan has yet been approved. Since a solid waste management plan had not yet been approved, the DNR was not prohibited from issuing the permit to the Reids.

2. The trial court's decision to deny costs and attorney's fees under the environmental protection act cannot be affirmed because it is unclear whether the court was aware of or exercised its discretion in awarding such costs and fees under that act. A trial court may grant costs and attorney's fees to a party under the act even when the party has not fully prevailed. The cause is remanded to the trial court so that it may fully exercise its discretion and apply the appropriate standards in determining whether or not costs and attorney's fees should be apportioned.

3. The trial court's determination that, before the DNR may issue a Type II solid waste operating license for the Reid site, it must first determine that the site is consistent with a site selection plan involving a choice among alternative geographic sites is reversed.

Affirmed in part, reversed in part, and remanded.

1. ENVIRONMENT — SOLID WASTE DISPOSAL — DEPARTMENT OF NATURAL RESOURCES — SOLID WASTE MANAGEMENT ACT.

The director of the Department of Natural Resources, when application for a new solid waste disposal area construction permit is made to the department, must issue a construction permit once he or she has notified the affected municipality, state agencies, and local public of the proposed undertaking and the procedure for forcing a public hearing and has re-

viewed the proposed site and plan of operation and found that there is compliance with the Solid Waste Management Act and its implementing rules; the act does not prohibit the department from issuing a solid waste disposal area construction permit in an area for which no solid waste management plan has yet been approved (MCL 299.401 *et seq.;* MSA 13.29[1] *et seq.).*

2. COSTS — ENVIRONMENTAL PROTECTION ACT — APPEAL.

Costs, including attorney's fees, may be apportioned to the parties in actions under the Michigan environmental protection act if the interests of justice so require; the award of costs and attorney's fees in a case brought under the act is within the broad and unfettered discretion of the trial judge, which must be recognized and exercised; upon review, the Court of Appeals looks only to see if such discretion has been recognized and exercised (MCL 691.1203[3]; MSA 14.528[203][3]).

3. ENVIRONMENT — SOLID WASTE DISPOSAL — DEPARTMENT OF NATURAL RESOURCES — SOLID WASTE MANAGEMENT ACT.

The Department of Natural Resources need not first determine that a proposed solid waste disposal site is consistent with a site selection plan involving a choice among alternative geographic sites before issuing a Type II solid waste operating license for the site (MCL 299.411[2][d]; MSA 13.29[11][2][d]).

*Brown & Brown* (by *Prentiss M. Brown, Jr.,* and *Charles M. Brown),* for plaintiff.

*Peacock, Ingleson, Vinocur & Brewster, P.C.* (by *Harry Ingleson, II),* for defendants Reid.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Terrence P. Grady* and *Timothy F. Konieczny,* Assistants Attorney General, for defendant Director, Department of Natural Resources.

Before: R. M. MAHER, P.J., and J. H. GILLIS and GRIBBS, JJ.

PER CURIAM. Plaintiff appeals as of right from a July 23, 1982, trial court opinion and judgment

which held that the Solid Waste Management Act, MCL 299.401 *et seq.;* MSA 13.29(1) *et seq.,* does not prohibit the Department of Natural Resources (DNR) from issuing a solid waste disposal area construction permit in an area for which no solid waste management plan has yet been approved. Plaintiff also appeals from the trial court's denial of attorney fees under the Michigan environmental protection act (MEPA), MCL 691.1201 *et seq.;* MSA 14.528(201) *et seq.* Defendants Reid in turn have filed a cross-appeal, challenging the trial court's decision not to grant them attorney fees under MEPA. Finally, defendant DNR has filed a separate cross-appeal from the trial court's determination that the Solid Waste Management Act requires the DNR to approve a "site selection plan" before issuing a Type II solid waste disposal area operating license.

Defendants Reid own 43.6 acres of property in Dafter Township. They sought and obtained from defendant DNR a solid waste disposal area construction permit authorizing the construction of a Type II solid waste disposal area on their property. Plaintiff township filed a complaint seeking to set aside the construction permit on the ground that the permit was issued in violation of the Solid Waste Management Act because the act prohibited the DNR from issuing a construction permit until after the Eastern Upper Peninsula Regional Planning and Development Commission (EUP) had drafted, and the DNR approved, a 20-year waste management plan. Plaintiff township also sought to enjoin the operation of the Type II solid waste disposal area because its operation would be likely to pollute, impair, or destroy the single source aquifer for the Dafter Township area, and so would violate the provisions of the MEPA. After

an 11-day bench trial, the trial court ruled in favor of the DNR under the Solid Waste Management Act, but held, that before the DNR issued a Type II solid waste disposal area operating license for the Reid site, the DNR should first determine that the Reid site was "consistent with a published site selection plan approved by defendant DNR". The court defined such a plan as a "plan by which defendant DNR, in writing, makes a choice among alternative geographic sites, comparing and evaluating each alternative, and reciting its reasons for approval of any particular site". The trial court then held that *construction* of the Type II solid waste disposal area, as already authorized by the DNR, would not, of itself, be likely to pollute, impair, or destroy the natural resources, and so was not prohibited by the MEPA. However, the trial court held that *operation* of the disposal area, if built to the specifications approved by the DNR, would violate the MEPA unless there was confirmation of adequate clay sealer and further evaluation of possible uplift. The court therefore ordered that the disposal area could not be operated until a study or tests established to the DNR's satisfaction that operation of a disposal area on the Reid site complied with the rules promulgated pursuant to the Solid Waste Management Act. Finally, the court ruled that "inasmuch as no party has fully prevailed, no costs and fees shall be assessed".

We affirm the trial court's judgment that the Solid Waste Management Act does not prohibit the DNR from issuing a solid waste disposal area construction permit in an area for which no solid waste management plan has yet been approved. MCL 299.430(3); MSA 13.29(3)(3) provides:

"(3) The director shall not issue a license for the development or operation of a new solid waste disposal

area or resource recovery facility in a plan area unless the facility complies with and is consistent with an approved solid waste management plan."

This language clearly prohibits the issuance of a license only where the facility does not comply with or is not consistent with an already-approved solid waste management plan. The statute does not prohibit the issuance of a license until after the approval of such a solid waste management plan. This conclusion is buttressed by the inclusion in the act of a self-executing provision in the sections which govern the issuance of construction permits. When application for a new solid waste disposal area construction permit is made to the DNR, the director must issue a construction permit once he or she has notified the affected municipality, state agencies, and local public of the proposed undertaking and the procedure for forcing a public hearing and has reviewed the proposed site and plan of operation and found that there is compliance with the Solid Waste Management Act and its implementing rules. MCL 299.411; MSA 13.29(11). If the director fails to make a final decision on a construction permit application, "the permit shall be considered issued". MCL 299.412(1); MSA 13.29(12)(1). The issuance of licenses is governed by similar provisions. MCL 299.415(1); MSA 13.29(15)(1). Since a solid waste management plan had not yet been approved, the DNR was not prohibited from issuing the permit.

We are unable, however, to affirm the trial court's determination to deny both plaintiff township and defendants Reid costs and attorney's fees under the MEPA because it is unclear from the trial court's opinion and judgment that the court was aware of, or exercised, its discretion in awarding such costs under the MEPA.

Under the MEPA, MCL 691.1203(3); MSA 14.528(203)(3), "[c]osts may be apportioned to the parties if the interests of justice require". "Costs" have since been interpreted to include both costs and attorney's fees. *Three Lakes Ass'n v Kessler,* 101 Mich App 170; 300 NW2d 485 (1980); *Superior Public Rights, Inc v Dep't of Natural Resources,* 80 Mich App 72; 263 NW2d 290 (1977), *lv den* 406 Mich 926 (1979); *Taxpayers & Citizens in the Public Interest v Dep't of State Highways,* 70 Mich App 385; 245 NW2d 761 (1976). The award of such costs and attorney's fees is within the "broad and unfettered discretion of the trial judge", *Taxpayers & Citizens in the Public Interest, supra,* 70 Mich App 387-388, and the court's decision will be reviewed only to see that the court recognized its discretion and exercised it. *Superior Public Rights, Inc, supra,* 80 Mich App 90.

In this case, the trial court noted only that it would not award costs and fees to either party because "no party has fully prevailed". While costs normally should not be awarded under GCR 1963, 526.1 where neither party has prevailed in full, the MEPA constitutes a statutory exception to GCR 1963, 526.1. The trial court therefore *may* grant costs, including attorney's fees, to a party even when it has not fully prevailed.

Because we are unable to determine from the trial court's decision that the court was aware of its broader discretion under the MEPA, we must remand this cause to the trial court so that the court may fully exercise its discretion and apply the appropriate standards in determining whether or not costs, including attorney's fees, should be apportioned. In so deciding, we do not express any opinion on the merits of either plaintiff township's or the Reids' motion for apportionment of costs.

Finally, we reverse the trial court's determination that before the DNR may issue a Type II solid waste operating license for the Reid site, the DNR must first determine that the Reid site is consistent with a "site selection plan" involving a choice among alternative geographic sites. The Solid Waste Management Act requires only that upon receipt of a construction permit application, the director or an authorized representative of the director shall:

"Review the plans of the proposed operation to determine if it complies with this act and the rules promulgated under this act. The review shall be made by persons qualified in hydrogeology and sanitary landfill engineering. A written approval by the persons qualified in hydrogeology and sanitary landfill engineering shall be received before a construction permit is issued. If the site review, plan review, and the application meet the requirements of this act and the rules promulgated under this act, the director shall issue the construction permit which may contain a stipulation specifically applicable to the site and operation. An expansion, enlargement, or alteration of a facility beyond the specified areas indicated in the original construction application shall constitute a new proposal for which a new construction permit is required." MCL 299.411(2)(d); MSA 13.29(11)(2)(d).

This review is clearly limited to a determination that the individual proposed site meets the requirements of the act, and does not extend to a comparison of the merits of the proposed site with the merits of other, perhaps nonexistent, sites. This focused review does not in any way inhibit public input into or opposition to the decision to grant a construction permit because, under MCL 299.411; MSA 13.29(11), the director of the DNR must notify the municipality in which the facility is to be located and other local entities that a

construction permit application has been received, and must circulate a public newspaper notice "in the vicinity of the proposed undertaking". The public is thus fully able to contribute to the decision of the DNR to grant or deny the requested permit.

Affirmed in part, reversed in part, and remanded for proceedings not inconsistent with this opinion. No costs, as a public question is involved.