COUNTY OF SAGINAW v SEXTON CORPORATION OF
MICHIGAN

Docket No. 81021. Submitted October 3, 1985, at Lansing.—Decided
April 9, 1986. Leave to appeal applied for.

John Sexton Corporation of Michigan, a solid waste disposal
business, owned a parcel of property in James Township, Sagi-
naw County, which it developed as a landfill site for nonhazar-
dous solid waste. In July, 1984, Sexton began transferring 70 to
75 tons of solid waste per day from Bay City, in Bay County, to
its landfill in James Township. The County of Saginaw
promptly filed suit against Sexton in Saginaw Circuit Court
seeking an injunction enjoining defendant from using its prop-
erty for the disposal of solid waste from any county other than
Saginaw County. Following a bench trial, the court, Robert S.
Gilbert, J., granted plaintiff's request for a permanent injunc-
tion, finding that, although plaintiff's solid waste management
plan did not expressly prohibit the disposal in Saginaw County
of solid waste from Bay County or any other county, the plan
did identify defendant's landfill for a specific and exclusive
purpose and that defendant's activities significantly interfered
with the plan adopted by Saginaw County and approved by the
state. Defendant appealed. *Held:*

1. The trial court did not err in issuing a permanent injunc-
tion prohibiting defendant's operation of the James Township
landfill site in a manner inconsistent with the Saginaw County
solid waste management plan. The James Township landfill is
not identified in Saginaw County's solid waste management
plan as a disposal area for solid waste generated in Bay
County.

2. Defendant's remaining issues are without merit.

Affirmed.

1. ADMINISTRATIVE LAW — ADMINISTRATIVE RULES AND REGULATIONS
— JUDICIAL CONSTRUCTION.

The Court of Appeals in interpreting administrative rules and

REFERENCES

Am Jur 2d, Administrative Law §§ 473, 474.

Am Jur 2d, Pollution Control §§ 17, 23-33, 244-246.

Applicability of zoning regulations to waste disposal facilities of
state or local governmental entities. 59 ALR3d 1244.

regulations assigns great deference to the interpretation pro-·
vided by the administrative agency responsible for implement-
ing them.

2. ENVIRONMENT — LANDFILLS — COUNTIES — INTERCOUNTY TRANS-
    FER OF WASTE — SOLID WASTE MANAGEMENT ACT.
  A county may prevent the use of a landfill within its borders for
    disposal of solid waste generated in another county if such use
    is inconsistent with its state approved solid waste management
    plan enacted pursuant to the Solid Waste Management Act
    (MCL 299.401 *et seq.;* MSA 13.29[1] *et seq.).*

*Borrello, Thomas & Jensen, P.C.* (by *Leopold P. Borrello* and *Jill K. Smith),* for plaintiff.

*Richard A. Hamilton,* for defendant.

Before: M. J. KELLY, P.J., and ALLEN and R. M. SHUSTER,* JJ.

PER CURIAM. Defendant appeals as of right from a permanent injunction in favor of plaintiff enjoining defendant from using its property for the disposal of solid waste from any county other than Saginaw County. We affirm.

Defendant John Sexton Corporation of Michigan is engaged in the business of solid waste disposal and is the owner of a parcel of property located in James Township, Saginaw County. In late 1980 and early 1981, defendant developed this property as a landfill site for nonhazardous solid waste. The controversy presented in the instant case is whether Saginaw County's solid waste management plan prohibits defendant from using the site for the disposal of solid waste generated in neighboring Bay County. An understanding of the facts and issues involved is facilitated by a review of the Solid Waste Management Act (Act 641), MCL 299.401 *et seq.;* MSA 13.29(1) *et seq.*

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Act 641 was enacted in 1978, effective January 11, 1979, and repealed the garbage and refuse disposal act, MCL 325.291 *et seq.;* MSA 14.435(1) *et seq.,* which provided for the licensing and regulation of refuse disposal facilities but did not require local planning or long-term solid waste management. *Delta County v Dep't of Natural Resources,* 118 Mich App 458, 463; 325 NW2d 455 (1982), *lv den* 414 Mich 954 (1982). The new act provided a comprehensive regulatory scheme imposing uniform, state-wide standards and procedures for solid waste disposal, transportation and planning and effectively preempted local control in this area, although significant opportunity for local involvement is built into the act. *Southeastern Oakland County Incinerator Authority v Avon Twp,* 144 Mich App 39, 45-46; 372 NW2d 678 (1985); House Legislative Analysis, HB 6314, January 11, 1979.

Under the act, every Michigan county is required to prepare a 20-year solid waste management plan projecting the amount of solid waste that will be generated within that county and providing for its disposal at facilities in compliance with Act 641 and with the administrative rules promulgated thereunder.[1] MCL 299.425; MSA 13.29(25); *South Haven Twp v Dep't of Natural Resources,* 132 Mich App 222, 227; 346 NW2d 923 (1984); *Delta County v Dep't of Natural Resources, supra,* p 462. Each county's solid waste management plan must be submitted to the director of the Department of Natural Resources for approval and, if approved, the local plan is incorporated as part of the state solid waste management plan. MCL 299.432(1); MSA 13.29(32)(1). The state di-

---

[1] If a county refuses or declines to prepare its own solid waste management plan, Act 641 authorizes the director of the Department of Natural Resources to do so in its stead. MCL 299.425(6); MSA 13.29(25)(6).

rectly regulates both the construction and operation of disposal sites and facilities in Michigan through the issuance of construction permits under MCL 299.410; MSA 13.29(10) and operator licenses under MCL 299.413; MSA 13.29(13).

Pursuant to MCL 299.425(3); MSA 13.29(25)(3), plaintiff filed a notice of intent with the DNR in 1979, stating that it would prepare a county-wide solid waste management plan through its board of public works. Early in the planning stages, plaintiff contacted officials of both Bay and Midland counties in an effort to determine whether there was interest in joint solid waste management planning. Neither county responded. Plaintiff proceeded to develop a plan which was eventually approved by the specially appointed 13-member planning committee required under MCL 299.426; MSA 13.29(26), the Saginaw County Board of Commissioners and the individual municipalities located within Saginaw County. MCL 299.428; MSA 13.29(28). Plaintiff's plan projected nine years of available landfill capacity in Saginaw County as of September 1982. One of the landfill sites reported in the plan was defendant's James Township landfill, identified as a disposal site for Saginaw County waste only. This plan was approved by the DNR on June 26, 1984, following the requisite notices and hearings. MCL 299.427; MSA 13.29(27).[2]

In July of 1984, defendant commenced operating a facility which it had constructed in Bay County to collect solid waste material generated in that county for transfer to the James Township landfill. Defendant had obtained a permit from the DNR on June 30, 1983, to construct its Bay County facility but was denied a license to operate under

[2] We do not know whether defendant objected to the designation given the James Township landfill in the Saginaw County plan prior to its approval.

MCL 299.413; MSA 13.29(13) because the DNR had not yet approved Bay County's solid waste management plan. The Bay County plan identified defendant's James Township landfill as a disposal site for Bay County waste, in direct conflict with plaintiff's solid waste management plan, already approved by the DNR and part of the state plan. Plaintiff formally objected to the Bay County plan and the DNR withheld its approval, in part because of the conflict over the use of defendant's James Township landfill. Defendant, however, obtained a license to operate its transfer facility from Bay City[3] and, in July of 1984, began transferring 70 to 75 tons of solid waste per day to its landfill in James Township.

Plaintiff promptly filed this lawsuit for injunctive relief. After a hearing conducted on August 3, 1984, the circuit court issued a preliminary injunction limiting the amount of solid waste materials transferred from the Bay County facility to the James Township landfill to three trailer-loads per day. A bench trial was conducted on September 11, 1984. The director of public works for Saginaw County testified that the disposal of an additional 75 tons of solid waste per day in Saginaw County would reduce the county's available landfill capacity from a nine-year to a five-year level. The director further pointed out that if the Bay County facility was allowed to operate at its maximum transfer capacity, plaintiff's overall landfill space would be reduced by as much as 40%.

The trial court rendered a decision in favor of plaintiff, holding that, although plaintiff's solid waste management plan did not expressly prohibit the disposal in Saginaw County of solid waste from

[3] The license to operate issued by Bay City was in direct conflict with the provision of Act 641 which vests the DNR with the exclusive authority to issue operator licenses, MCL 299.413; MSA 13.29(13).

Bay County or any other county, the plan did identify defendant's landfill for a specific and exclusive purpose and that defendant's activities significantly interfered with the plan adopted by the county and approved by the state. The court concluded that defendant could not continue transferring solid waste materials from Bay County and issued its permanent injunction on September 24, 1984.

Defendant's principal arguments both at trial and on appeal are that Act 641 does not authorize a county to prohibit the intercounty flow of solid waste and that a county's solid waste management plan need not identify a disposal area as serving another county before the private owner of that area is permitted to use the property for that purpose. We consider defendant's second argument regarding the necessity of identifying an intercounty disposal site as such in both counties' solid waste management plans.

Act 641 specifically authorizes and requires the director of the Department of Natural Resources to promulgate administrative rules governing the content, form and submission of waste management plans. MCL 299.430(1); MSA 13.29(30)(1). Pursuant to this statutory mandate, 1982 AACS, R 299.4711 was promulgated, setting forth detailed and specific requirements governing the development of an acceptable waste management plan. A county is required to realistically evaluate its access to disposal areas for 5- and 20-year periods. 1982 AACS, R 299.4711(e)(i)(C). Moreover, the county must "identify specific sites for solid waste disposal areas for the 5-year period subsequent to plan approval or update". 1982 AACS, R 299.4711(e)(iii)(A).

The administrative rules specifically provide that intercounty transfers of solid waste materials

must be identified in the plans of each county involved:

"A site for a solid waste disposal area that is located in one county, but serves another county, shall be identified in both county solid waste management plans." 1982 AACS, R 299.4711(e)(iii)(C).

Defendant argues that this rule merely instructs county planning agencies to ensure that solid waste generated within its boundaries is delivered only to facilities in compliance with state law, even where that facility is outside the planning county. We disagree and instead interpret 1982 AACS, R 299.4711(e)(iii)(C) as requiring intercounty planning and cooperation where there is an intercounty flow of solid waste.

In interpreting administrative rules and regulations, this Court assigns great deference to the interpretation provided by the administrative agency responsible for implementing them. *Knauss v State Employees' Retirement System,* 143 Mich App 644, 648; 372 NW2d 643 (1985). It is clear that the DNR, the agency responsible for implementing the solid waste management rules and regulations, interprets 1982 AACS, R 299.4711(e)(iii)(C) as a requirement that intercounty waste disposal sites shall be designated as such in the involved counties' solid waste management plans. The DNR refused to approve Bay County's plan in part because defendant's landfill designated as a disposal area for Bay County waste was not similarly designated in Saginaw County's plan. We agree with the interpretation provided by the DNR and view it as the only reasonable interpretation consistent with the general purposes of Act 641. *Southeastern Oakland County Incinerator Authority, supra.*

Defendant alternatively argues that the DNR acted beyond the scope of its authority in promulgating 1982 AACS, R 299.4711(e)(iii)(C) because Act 641 does not authorize county control of the intercounty flow of waste. This argument ignores the fact that a county solid waste management plan is not effective until approved by the state, at which time it becomes a part of the state solid waste management plan. Although the county plan originates with the county, the blueprints for that plan are provided by a host of statutory and administrative regulations. The real issue here is whether Act 641 authorizes the state to control the intercounty flow of solid waste material.

An important goal of Act 641 is to provide for long-term planning in the area of solid waste management. To effectuate this goal, the Legislature required counties to adopt management plans which:

"[S]hall include an enforceable program and process to assure that the nonhazardous solid waste generated or to be generated in the planning area for a 20-year period is collected and recovered, processed, or disposed of at facilities which comply with state law and rules promulgated by the department * * *". MCL 299.425(1); MSA 13.29(25)(1).

While the specific requirements governing waste management plans were to be developed by the director of the DNR, the Legislature did instruct that the administrative rules include a provision directing counties to evaluate whether "the plan area has, and will have during the plan period, access to a sufficient amount of available and suitable land * * * to accommodate the development and operation of solid waste disposal areas". MCL 299.430(1)(h); MSA 13.29(30)(1)(h). The Legislature has thus clearly indicated that a county's

reliance on a specific landfill site is to be identified in its waste management plan.

If the state is to implement a workable solid waste management plan, then the individual county plans on which it is based must be reliable. A county plan which identifies a privately owned facility for the disposal of solid waste only from that county must be enforceable. Were we to construe Act 641 and the administrative rules promulgated thereunder to allow private businesses to operate their facilities in a manner inconsistent with a county waste management plan, we would frustrate the intent of the Legislature in enacting Act 641.

While defendant correctly asserts that private sector involvement in the business of solid waste disposal is expressly encouraged by the Legislature, we emphasize that the Legislature conditioned its encouragement on compliance with county plans, MCL 299.430(1)(f); MSA 13.29(30)(1)(f), and on compliance with the minimum requirements of Act 641. MCL 299.435; MSA 13.29(35). Defendant is a business engaged in a highly regulated field. It is charged with constructive knowledge of the regulatory scheme governing its operations. Under that scheme, defendant had opportunity to review the Saginaw County solid waste management plan prior to its adoption and approval and register any dissatisfaction at a public hearing or with any of the various governmental bodies required to approve the plan. MCL 299.427(e), (f); MSA 13.29(27)(e), (f).

We hold that because defendant's James Township landfill is not identified in Saginaw County's solid waste management plan as a disposal area for solid waste generated in Bay County, the trial court did not err in issuing a permanent injunction prohibiting defendant's operation of the land-

fill site in a manner inconsistent with the Saginaw County plan.

The remaining issues raised by defendant on appeal are without merit.

Plaintiff's petition for a permanent injunction is not barred by the principles of estoppel or laches. Defendant's decision to construct and operate a transfer facility in Bay County was independent of any actions on the part of Saginaw County and was governed by state regulation. Defendant was well aware of the legislative mandate requiring county-wide solid waste management plans and knew that the department had rejected the plan submitted by Bay County which identified its landfill as a disposal area. There is no act or omission on plaintiff's part which could reasonably have induced defendant to believe that the James Township landfill could be used for disposal of waste from Bay County. See *Lumber Village, Inc v Siegler,* 135 Mich App 685, 697; 355 NW2d 654 (1984). Moreover, plaintiff instituted this suit against defendant less than one month after defendant began transporting solid waste material from Bay County for disposal in Saginaw County. The affirmative defense of laches is therefore inapplicable. *In re Crawford Estate,* 115 Mich App 19, 25-26; 320 NW2d 276 (1982).

The trial court did not abuse its discretion in excluding any evidence of the intent of the Saginaw County planning commission to omit general reference to the intercounty transfer of waste. The plan itself provided that some undetermined amount of solid waste was to be transferred from Saginaw County to other counties and that some undetermined amount of waste was to be transferred from other counties to Saginaw County. The evidence excluded was neither relevant nor material to the issue of whether Bay County waste

could be deposited at the James Township landfill consistent with the Saginaw County solid waste management plan.

Finally, we find that the Saginaw County Board of Commissioners properly authorized the commencement of this suit by resolution of August 14, 1984. The board's decision to institute suit was based on a report prepared by a committee and that committee's report constitutes the resolution. We see nothing improper in this procedure.

Affirmed.