DAFTER TOWNSHIP v REID

Docket No. 89142. Submitted November 6, 1986, at Lansing. Decided
April 7, 1987. Leave to appeal applied for.

Dafter Township brought an action in the Chippewa Circuit
Court against Edward G. Reid, Elaine Reid, the City of Mar-
quette and the Department of Natural Resources, seeking to
enjoin the dumping of solid waste from Marquette into a
landfill owned and operated by the Reids in Dafter Township.
In its first amended complaint, plaintiff alleged: (1) it is entitled
to injunctive relief under the Solid Waste Management Act
because provisions for City of Marquette solid waste were not
made under either the solid waste management plan covering
Chippewa, Mackinac and Luce Counties (tri-county area) or the
plan covering Marquette County; (2) hazardous waste was
dumped in the Reids' landfill in violation of both the Solid
Waste Management Act and the Hazardous Waste Manage-
ment Act; and (3) operations in the landfill were in violation of
rules promulgated pursuant to the Solid Waste Management
Act. The trial court, Charles H. Stark, J., following a hearing,
granted summary judgment in favor of defendants on the first
claim described above, ruling that, since the DNR had granted a
license to the Reids before it approved the plan covering
Chippewa County, the plan could not operate to exclude dis-
posal of Marquette's waste. A hearing on plaintiff's other
claims was adjourned pending the trial court's determination of
whether state regulation preempted plaintiff's suit. Plaintiff
moved to open discovery and amend its complaint. The trial
court entered an order granting plaintiff leave to amend its
complaint, permitting plaintiff to have an inspection of the
Reids' landfill, and barring all discovery except by way of
interrogatories. Plaintiff's second amended complaint alleged:
(1) importation of solid waste for disposal in the Reids' landfill

REFERENCES

Am Jur 2d, Appeal and Error § 822.
Am Jur 2d, Depositions and Discovery § 5.
Am Jur 2d, Injunctions §§ 24, 25.
Am Jur 2d, Pollution Control §§ 244 et seq.
See the annotations in the Index to Annotations under Appeal and
Error; Discovery; Injunctions; Landfills.

from sources other than Marquette and not included in the tri-county solid waste management plan violated 1982 AACS, R 299.4711(e)(iii)(C); (2) violations of the Solid Waste Management Act; and (3) violations of operational rules promulgated pursuant to the Solid Waste Management Act. The DNR filed a motion for summary disposition, arguing that plaintiff had failed to state a claim upon which relief could be granted. Plaintiff filed (1) a motion for a preliminary injunction prohibiting the importation of solid waste to the Reid's landfill from beyond those counties covered under the tri-county plan, (2) a motion to open discovery, (3) a motion for a preliminary injunction to prevent the DNR from reviewing the Reids' operating license, and (4) a motion for a preliminary injunction to close the Reids' landfill until the Reids secured a disposal source for leachate generated by their landfill. Following a hearing, the trial court enjoined the Reids from accepting any further waste or other material unless a new license was issued by the DNR (a license was subsequently issued). The trial court denied plaintiff's motions (1), (2) and (4), but held that the Reids were operating without a license and were subject to the penalties provided under the Solid Waste Management Act, since their two-year license had technically expired. Plaintiff appealed. Defendants Reid cross-appealed the trial court's finding that their operating license had expired.

The Court of Appeals *held*:

1. The trial court did not abuse its discretion in limiting discovery by denying plaintiff's request to depose certain DNR officials. At the time the request was denied, the trial court had good reason to arrest discovery pending a resolution of the preemption issue. Plaintiff had approximately two months in which interrogatories could have been taken and was familiar with the Reids' landfill from prior litigation in connection with its efforts to enjoin the landfill's construction and operation. Thus, plaintiff could not properly claim that the trial court improperly limited discovery.

2. The trial court properly found that the Reids had timely filed for renewal of their license, but erroneously found that the license had expired because the Reids were not in compliance with certain operational rules promulgated under the Solid Waste Management Act. When a licensee makes timely and sufficient application for renewal of a license with reference to an activity of a continuing nature, the existing license does not expire until a decision on the application is finally made by the issuing agency. The trial court properly refused to

enjoin the DNR from reviewing the Reids' license renewal application.

3. Plaintiff cited no authority and thus did not preserve as an issue on appeal its contention that the trial court should have retained jurisdiction in view of the Reids' continuing failure to comply with rules promulgated pursuant to the Solid Waste Management Act and the DNR's unwillingness to enforce those rules.

4. The trial court did not abuse its discretion in refusing to enjoin the importation of waste from outside the tri-county area. Plaintiff did not establish that irreparable harm would result if an injunction was not granted. No evidence was introduced that the dumping operations were causing pollution or that hazardous waste was being deposited in the landfill. Additionally, the twenty-year capacity of the tri-county area was not being compromised since the Reids' landfill is not a part of the tri-county area's solid waste management plan.

5. Rule 299.4711(e)(iii)(C) requires that a solid waste disposal area located in one county, but serving another county, be identified in both county solid waste management plans. Under the Solid Waste Management Act, a municipality can seek an injunction preventing the continued operation of a landfill which accepts solid waste in violation of this rule. In this case, since plaintiff failed to establish that disposal at the Reids' landfill of solid waste from East Jordan, Muskegon, Menominee and counties outside the tri-county area other than Marquette was not reflected on solid waste management plans for those counties, plaintiff could not enjoin the disposal of solid waste from those counties.

6. Disposal of solid waste from the City of Marquette at the Reids' landfill is not reflected in the tri-county solid waste management plan and no plan existed for Marquette County. However, since the proofs disclosed that the incoming waste (1) does not constitute a pollution hazard, (2) will not compromise the tri-county area's planned landfill capacity, and (3) is being disposed of in reasonable compliance with operating rules of the DNR, the trial court did not err in refusing to enjoin the importation of the City of Marquette's solid waste.

Affirmed.

1. TRIAL — DISCOVERY.

The grant or denial of discovery is within the trial judge's discretion; the trial judge must consider whether the extension of discovery will facilitate rather than impede the litigation, the timeliness of the request, the duration of the litigation, and possible prejudice to the litigants.

2. Environment — Solid Waste Landfills — Licenses — Renewal of Licenses.

> The operating license of a solid waste landfill operator, where such operator has made timely and sufficient application for renewal, does not expire until a decision on the application is finally made by the Department of Natural Resources (MCL 24.291[2], 299.415[2]; MSA 3.560[191][2], 13.29[15][2]).

3. Appeal — Equity — Findings of Fact.

> The Court of Appeals, in reviewing equity cases, defers to the trial court's findings of fact unless it is convinced that it would have reached a contrary result.

4. Injunctions — Equity.

> The grant or denial of an injunction is committed to the sound discretion of the circuit court; injunctive relief is an extraordinary remedy which issues only when justice requires and there is not an adequate remedy at law, and when there is real and imminent danger of irreparable injury.

5. Environment — Solid Waste Landfills — Solid Waste Management Act.

> A rule promulgated under the Solid Waste Management Act requires that a solid waste disposal area located in one county, but serving as a disposal area for another county, be identified in both county solid waste management plans; the municipality wherein a solid waste disposal area is receiving solid waste in violation of this rule has a right of action to seek enforcement of the rule; however, where the incoming solid waste (1) does not constitute a pollution hazard, (2) will not compromise the receiving county's planned landfill capacity, and (3) is being disposed of in reasonable compliance with operating rules of the Department of Natural Resources, a circuit court may not enjoin the solid waste disposal area's operations on the basis of the rule (MCL 299.433; MSA 13.29[33]; 1982 AACS, R 299.9711[e][iii][C]).

*Brown & Brown* (by *Prentiss M. Brown, Jr.,* and *Charles M. Brown*), for plaintiff.

*Peacock & Ingleson, P.C.* (by *Harry Ingelson II,* and *W. John Stenton*), for Edward G. Reid and Elaine Reid.

*Willard L. Martin,* City Attorney, for the City of Marquette.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Thomas J. Emery* and *Kevin T. Smith,* Assistant Attorneys General, for the Department of Natural Resources.

Before: D. E. HOLBROOK, JR., P.J., and ALLEN and P. J. CLULO,* JJ.

ALLEN, J. Once again plaintiff township returns to this Court in its longstanding effort to preclude the operation of a solid waste landfill within plaintiff's boundaries in Chippewa County. On this occasion, plaintiff appeals from a November 15, 1985, order of the Chippewa Circuit Court denying plaintiff's motions for preliminary injunctions and dismissing plaintiff's complaint alleging violations of the Solid Waste Management Act, MCL 299.401 *et seq.;* MSA 13.29(1) *et seq.,* and rules promulgated under that act. Plaintiff's prior attempt to set aside a construction permit issued to defendants Reid and to enjoin the operation of the landfill on grounds that it would be likely to pollute, impair or destroy the single source aquifer in the Dafter Township area was rejected by this Court in *Dafter Twp v Reid,* 131 Mich App 283; 345 NW2d 689 (1983), lv den 419 Mich 903 (1984).

In August, 1980, the Eastern Upper Peninsula Regional Planning and Development Commission commenced drafting a twenty-year waste management plan for Mackinac, Chippewa and Luce Counties. In September, 1983, prior to the final approval of the tri-county plan, defendants Reid, owners of 43.6 acres of land in Dafter Township, were issued a license by defendant Department of Natural Resources to operate a Type II landfill. About the same time, the City of Marquette, which from 1940 to the early 1980's had operated a

---

* Circuit judge, sitting on the Court of Appeals by assignment.

landfill within its own limits, was required by the DNR to close its landfill operation because of the disposal of several thousand gallons of fuel oil in 1973. Because a solid waste disposal plan for Marquette County as required by the Solid Waste Management Act was not yet formulated, the city was forced to make temporary arrangements for the disposal of its refuse. Accordingly, the city procured the construction of a compacting and transfer station so as to be able to transport refuse out of the area and entered into a contract with defendants Reid for the disposal of city garbage on the Reids' property. The Reids' landfill is 165 miles east of Marquette.

In February, 1985, when Marquette first commenced sending its garbage to the Reids' landfill, plaintiff filed a complaint to enjoin the importation of the city's waste. On March 22, 1985, plaintiff filed a first amended complaint. Count I alleged that the City of Marquette was importing solid waste into Chippewa County for disposal at the Reids' landfill in violation of the solid waste management plan for Chippewa, Mackinac and Luce Counties (the tri-county area). Count I further alleged that no provision was made for Marquette in the solid waste management plans of either Marquette County, where the City of Marquette is located, or the tri-county area, thus entitling plaintiff to injunctive relief pursuant to MCL 299.433; MSA 13.29(33). Count II alleged that hazardous waste was dumped in the Reids' landfill in violation of both the Solid Waste Management Act, MCL 13.29(1); MSA 299.401, and the Hazardous Waste Management Act, MCL 299.501 *et seq.*, MSA 13.30(1) *et seq.* Count III alleged that the Reids had violated various operating rules promulgated pursuant to the Solid Waste Management Act. Plaintiff also filed a petition for a preliminary

injunctive order pursuant to MCR 3.310, based on allegations set forth in Counts I and II of the first amended complaint.

At a hearing held in Munising on March 28, 1985, acting Chippewa Circuit Judge Charles H. Stark elected to make findings of fact as to Count I which pertained to the importation issues raised in plaintiff's complaint. The court assumed the truth of all factual allegations in the first amended complaint and determined that disposal of solid waste without prior inclusion of the waste generator in the solid waste management plan would violate 1982 AACS, R 299.4711(e)(iii)(C). However, the court concluded that, since the Reids and Marquette executed their contract and the Reids received their license from the DNR prior to the DNR's approval of the tri-county area plan, the plan could not operate to exclude Marquette's waste disposal. Summary judgment in favor of defendants was granted on Count I. A hearing on Counts II and III was adjourned, and the parties were ordered to submit briefs addressing the issue of whether state regulation preempted plaintiff's suit.

On April 18, 1985, and April 24, 1985, respectively, plaintiff filed a notice of taking deposition and an amended notice of taking deposition. On April 24, 1985, the Reids filed a motion to arrest discovery pursuant to MCR 2.119, requesting that discovery be stayed since the court's decision on the preemption issue could resolve the case without the need for further discovery. On May 9, 1985, the court entered an order granting the Reids' motion until the court resolved the legal issues pertaining to Counts II and III. On June 28, 1985, plaintiff filed a motion for entry into the Reids' landfill for an inspection, a petition to

amend its complaint, and a motion to open discovery.

On July 12, 1985, plaintiff filed its second amended complaint against the Reids, Marquette, and the DNR. Count I alleged importation of solid wastes for disposal in the Reids' landfill from sources other than Marquette in violation of 1982 AACS, R 299.4711(e)(iii)(C), i.e., for failure to obtain inclusion in the tri-county area solid waste management plan. Count II alleged violations of MCL 299.407; MSA 13.29(7) and regulations promulgated pursuant to the Solid Waste Management Act by the disposal of hazardous waste in the Reids' landfill. Count III alleged various operational violations of Solid Waste Management Act rules. Injunctive relief was requested.

On July 23, 1985, the court entered an order granting plaintiff leave to amend its complaint, permitting plaintiff to have an inspection of the Reids' landfill, and barring all discovery except by way of interrogatories. Plaintiff's inspection took place on August 15 and 16, 1985.

On August 2, 1985, the DNR filed a motion for summary disposition pursuant to MCR 2.116(C)(8).

On August 27, 1985, plaintiff township filed (1) a motion for a preliminary injunction prohibiting importation of solid waste to the Reids' landfill from beyond the tri-county area, (2) a motion to open discovery, (3) a motion for a preliminary injunction to prevent the DNR from reviewing the Reids' operating license, and (4) a motion for a preliminary injunction to close the Reids' landfill until the Reids secured a disposal source for leachate generated by their landfill.

A two-day hearing and taking of testimony on plaintiff's four motions were held in September, 1985. On November 15, 1985, the trial court issued its opinion and order enjoining the Reids from

accepting any further waste or other material unless a new license was issued by defendant the DNR on or before February 20, 1986.[1] Plaintiff's motion (2) to open discovery and motions· (1) and (4) for injunctive relief were denied, and the second amended complaint was dismissed with prejudice. The court also held that the two-year operating license granted the Reids on September 9, 1985, had technically expired and that the Reids were operating without a license and were subject to the penalties of MCL 299.436; MSA 13.29(36).

From the judgment of the trial court plaintiff appeals raising five issues as grounds for reversal of the judgment dismissing plaintiff's second amended complaint and denying an injunction on the importation of waste from localties outside the tri-county area. Defendants Reid cross-appeal the trial court's finding that their operating license had expired. We address the issues in a sequence different from that raised by plaintiff.[2]

## I. RESTRICTIONS ON DISCOVERY

Plaintiff argues that the trial court unreasonably restricted plaintiff's ability to obtain discovery under MCR 2.302. Plaintiff took the depositions of three the DNR officials on March 25, 1985, and was in the process of taking the depositions of three other DNR officials when the Reids' attorney filed a motion to arrest discovery on April 23, 1985, with a hearing set for April 29, 1985. The court signed an order arresting discovery on May 9, and on June 27, 1985, plaintiff moved to open discovery. Following a telephone conference call with Judge

[1] Plaintiff's license to operate the landfill was renewed by the DNR prior to the deadline set by the court.

[2] Plaintiff's Issues I through V are addressed in the following order: III, IV, V, I, II.

Stark on July 9, the court issued an order on July 23, 1985, permitting plaintiff's expert to inspect the Reids' landfill and allowing the use of interrogatories, but not depositions.

It is plaintiff's contention that its ability to properly prepare its case for the crucial hearings on September 20 and 21, 1985, was severely limited due to the restrictions on discovery. Briefs of the DNR and the City of Marquette do not respond to this issue. Defendants Reid argue that in April, 1985, when it appeared that Dafter's complaint might be dismissed on the preemption issue, the court had good reason to arrest discovery until the court could resolve that issue and, after discovery was allowed, that plaintiff had approximately two months in which interrogatories could have been taken from any DNR official. We agree with defendants Reid.[3]

MCR 2.302(C) permits the circuit court to limit discovery under the following circumstances:

> (c) Protective Orders. On motion by a party or by the person from whom discovery is sought, and on reasonable notice and for good cause shown, the court in which the action is pending may issue any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following orders:
> (1) that the discovery not be had;
> (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place;

[3] The question of whether the Solid Waste Management Act preempted local government regulations concerning the operation of sanitary landfills was not resolved until July 1, 1985, when this Court in *Southeastern Oakland Incinerator Authority v Avon Twp*, 144 Mich App 39; 372 NW2d 678 (1985), affirmed the trial court's holding that a township is totally preempted from regulating landfill operations.

(3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; . . . .

The test for review of orders of a circuit court regarding the scope of discovery is set forth in *Masters v City of Highland Park,* 97 Mich App 56, 60; 294 NW2d 246 (1980), lv den 409 Mich 937 (1980):

> The granting or denial of discovery is within the trial judge's discretion. . . . An underlying consideration must be whether the granting or extension of discovery will facilitate rather than impede the litigation. . . . Factors such as the timeliness of the request, the duration of the litigation and possible prejudice to the litigants should be considered. . . . Unless it will create manifest injustice, after a reasonable length of time a judge should be able to terminate discovery and proceed with trial. [Citations omitted.]

Application of this test to the situation in the instant case discloses no unreasonable restriction on plaintiff's opportunity to discover. This is not a case where the township was unfamiliar with the disposal site or the operations being conducted thereon or the possibilities of pollution or harm to the environment. In 1981 the plaintiff had filed a complaint seeking to set aside a permit issued to the Reids to construct a Type II solid waste disposal area and to enjoin the operation thereof on grounds that it would be likely to pollute, impair, or destroy the natural resources in the township area. *Dafter Twp v Reid, supra.* Between February 26, when plaintiff filed suit, and April 23, 1985, when the motion to arrest discovery was filed, plaintiff had two months to take discovery. After the court's July 23, 1985, order allowing limited discovery, plaintiff had two months to subpoena

any employee of the Reids' landfill for trial on September 20-21. At trial, Edward Reid was called as a witness and plaintiff had the opportunity for cross-examination. Prior to the order arresting discovery, plaintiff took the deposition of the following the DNR personnel: Robert Curry, Unit Supervisor of the Geological Unit of the Hydrogeological Section of the Groundwater Division; David Bachelor, Environmental Enforcement Specialist; Thomas Worki, Supervisor of the Water Quality Division for the Upper Peninsula. At the September 20-21 hearing, plaintiff disclosed that it had reviewed the DNR file in Marquette, and during the hearing various documents from the DNR's files were introduced into evidence. Given these facts, we are not persuaded that the trial judge improperly limited discovery.

## II. INVALID OPERATING LICENSE—REFUSAL TO ENJOIN

The two-year license to operate the landfill was first issued on September 9, 1983. A renewal application with the required $100 fee was received by the DNR on September 9, 1985. Plaintiff contends that the two-year period expired on September 8, 1985. The trial court found that the renewal was timely but, because the Reids had failed to comply with certain rules,[4] found the license had expired and that the Reids were operating without a license. The court indicated that the prosecuting attorney, in his discretion, might bring a criminal charge. Nevertheless, the court declined to enjoin the operation of the landfill immediately. On appeal, plaintiff argues that, once the court found that the Reids were operating without a license, the court erred by not immediately issuing an

---

[4] Rule 299.4315(5)—Blowing Papers, Rule 299.4316(1)(5)—Cover, Rule 299.4315(9)—Burning, and Rule 299.4315(15)—Well Samples.

injunction. Defendants Reid cross-appeal, claiming that the court erred in finding that they were operating without a license.

MCL 299.415(2); MSA 13.29(15)(2) provides:

> An operating license shall expire 2 years after the date of issuance and may be renewed upon payment of a renewal application fee of $100.00 if the licensee has complied with this act and the rules promulgated under this act.

The plain wording of the statute that the license expires *after* two years from the date of issuance refutes plaintiff's claim that the application was submitted to the DNR one day too late. A year means a calendar year. MCL 8.3j; MSA 2.212(10). Two calendar years *after* the date of issuance is September 10, 1985. Accordingly, we approve the trial court's refusal to find the renewal untimely.

However, we must also rule upon the validity of the trial court's decision that the operating license was no longer valid because of the violation of various rules issued under the Solid Waste Management Act. In reaching this decision, the trial judge rejected the application of § 91(2) of the Administrative Procedures Act, MCL 24.291(2); MSA 3.560(191)(2), to extend the operating license. MCL 24.291(2); MSA 3.560(191)(2) provides:

> When a licensee makes timely and sufficient application for renewal of a license or a new license *with reference to activity of a continuing nature,* the existing license does not expire until a decision on the application is finally made by the agency, and if the application is denied or the terms of the new license are limited, until the last day for applying for judicial review of the agency order or a later date fixed by order of the reviewing court. This subsection does not affect valid agency action then in effect summarily suspending

such license under [MCL 24.292; MSA 3.560(192)]. [Emphasis supplied.]

The operation of a landfill is clearly and indisputably an "activity of a continuing nature" as that term is used in § 91(2) of the Administrative Procedures Act. Clearly, therefore, the otherwise expired license in the instant case retained its effect until the DNR took action reviewing the license prior to September 9, 1985, as ordered by the trial court. Thus, the trial court's decision that defendants Reid were operating the landfill without a license in violation of MCL 299.413(1); MSA 13.29(13)(1) was error. However, the court's refusal to grant a temporary injunction was proper, although for the wrong reason. *Warren v Howlett,* 148 Mich App 417, 426; 383 NW2d 636 (1986).

### III. TRIAL COURT'S REFUSAL TO RETAIN JURISDICTION

Plaintiff contends that because the Reids have continuously failed to comply with rules promulgated under the Solid Waste Management Act, and because the DNR has demonstrated an unwillingness to enforce those rules, the circuit court should have fashioned an oversight mechanism to insure that any license renewal granted by the DNR comported with the statute. Specifically, plaintiff asks that the Reids comport with the certification procedures set forth in 1982 AACS, R 299.4313, and that for this purpose the trial court should have retained jurisdiction.

Plaintiff cites no authority for this position in its brief on appeal. Therefore, the issue is not preserved. *Three Lakes Ass'n v Whiting,* 75 Mich App 564, 578-579; 255 NW2d 686 (1977). Further, we agree with the DNR that the issue is moot, it being conceded at oral argument that the DNR did renew the license.

Finally, on this issue we observe that the certification procedure requested by plaintiff is required only for the initial application for an operating license. MCL 299.413(3); MSA 13.29(13)(3).

### IV. IMPORTATION—CITY OF MARQUETTE

### V. IMPORTATION—OTHER SOURCES OUTSIDE THE TRI-COUNTY AREA

The key issues raised by plaintiff concern the trial court's refusal to grant injunctive relief, either temporary or permanent, against the importation of waste from outside the tricounty area. The primary purpose of plaintiff's complaint was to cut off the flow of waste, particularly the approximately fifty tons per day of garbage from the City of Marquette.

In equity cases, this Court must defer to the trial court's findings of fact unless it is convinced that it would have reached a contrary result. *Kern v City of Flint,* 125 Mich App 24, 27; 335 NW2d 708 (1983). See also MCR 2.613(C). The grant or denial of an injunction is committed to the sound discretion of the circuit court. *Campau v National Film Co,* 159 Mich 169, 172-173; 123 NW 606 (1909); *Hayes-Albion Corp v Kuberski,* 108 Mich App 642, 657; 311 NW2d 122 (1981), modified 421 Mich 170; 364 NW2d 609 (1984), reh den 421 Mich 1202 (1985). In *Wexford Co Prosecutor v Pranger,* 83 Mich App 197, 205; 268 NW2d 344 (1978), this Court noted:

> As to the question of whether the facts in the within case justify issuance of an injunction, we note that injunctive relief is an extraordinary remedy which issues only when justice requires and there is not adequate remedy at law, and when there is *real* and *imminent danger* of irreparable injury. [Emphasis in original.]

In *Wagner Electric Corp v Hydraulic Brake Co,* 269 Mich 560, 565; 257 NW 884 (1934), the Court stated:

> In theory, an injunction is issued for the purpose of preventing irreparable mischief; and it is only granted to stay an evil, the consequences of which could not be adequately compensated in damages if it were suffered to go on. The court should look beyond the actual injury to contemplate the consequences and, though palpably wrong, it should balance the inconveniences of awarding or denying the writ, and adjudge as these may incline the judicial mind.

Application of the balancing test does not disclose that the trial court abused its discretion. On the one hand, imminent and irreparable injury will befall the City of Marquette if it is prevented from transporting its Type II refuse to the Reids' landfill. Within a few days, fifty tons of garbage per day piling up at the city's licensed compacting and transfer site will create a hazard to public health. Except for a licensed site at Menominee, there is no other available licensed site in the Upper Peninsula, and it is highly unlikely Menominee could or would accept Marquette's refuse. Further, Marquette was using the Reids' site only because its own landfill was ordered closed because of leakage.

On the other hand, the testimony at trial showed little, if any, harm to plaintiff township if an injunction were not granted. Irreparable harm could result to Dafter Township or the tri-county area in two ways: (1) if the dumping operations caused pollution or if hazardous waste were deposited in the landfill area; and (2) if the planned twenty-year capacity of the tri-county's landfill sites was compromised.

No evidence was introduced to show pollution damage to the area. At the hearing in September, plaintiff's claim of leachate was found to be based on erroneous calculations. Further, allegations of hazardous waste dumping based on trucking manifests were not substantiated. Earl Olsen, a DNR official, testified that, while in the past the Reids had violated DNR rules in five particulars, the DNR and the Reids had subsequently agreed on a program to bring the landfill operation into compliance. He characterized the Reids' compliance with DNR regulations as good and stated that the operation was not a source of any major environmental problem. In his detailed written opinion summarizing the proofs, the trial judge found that the alleged violations caused by the lack of a leachate disposal system and the dumping of hazardous waste were not adequately shown.

Similarly, plaintiff failed to show that the tri-county's capacity to handle anticipated waste over the next twenty years would be compromised if waste were imported from Marquette and from other communities both within and without Michigan. Proofs disclosed that the Reids' landfill, though mentioned in the tricounty plan, was not relied upon when the Planning Commission established the twenty-year capacity requirements for the tri-county area. Although the Planning Commission knew about the Reids' landfill, it chose not to rely upon it to meet the anticipated landfill requirements of the tri-county area. Consequently, disposal of waste from Marquette and from other communities outside the tri-county area will have no impact on the tri-county plan.

Furthermore, although the testimony disclosed that the Reids were accepting Type II waste from such distant points as East Jordan, Muskegon, and Menominee, the proofs did not indicate whether

this importation was sporadic or whether it was continuous and substantial. In any event, it is abundantly clear that the tri-county area would not sustain a loss of landfill capacity. Thus, under either the *Wexford Co, supra,* real and imminent danger test, or the *Wagner Electric, supra,* balancing test, plaintiff did not carry its burden of proof to support an injunction. MCR 3.310(A)(4).

Undaunted by any failure to obtain injunctive relief under the balancing or imminent danger test, counsel for plaintiff argues that injunctive relief is nevertheless mandated by reason of the violation of rules promulgated by the director of the DNR. Pursuant to MCL 299.430(1); MSA 13,29(30)(1), the director of the DNR promulgated 1982 AACS, R 299.4701 *et seq.* These rules, effective January 6, 1982, explain and amplify the statutory procedure for the development and implementation of a solid waste management plan. Specifically, plaintiff claims a violation of the Solid Waste Management Act because of Marquette's failure to comply with Rule 299.4711 which states:

Rule 711. To comply with the requirements of the act and to be eligible for 80% state funding, county solid waste management plans shall be in compliance with the following general format and shall contain the following elements:

\* \* \*

(e) Plan selection shall be based upon the following:

\* \* \*

(iii) Site requirements, including the following requirements:

\* \* \*

(C) A site for a solid waste disposal area that is located in one county, *but serves another county, shall be identified in both county solid waste management plans.* [Emphasis supplied.]

A right of action to enforce violations of rules promulgated under the act is given municipalities under MCL 299.433; MSA 13.29(33). A "municipality" includes a township. MCL 299.405(2); MSA 13.29(5)(2).

Rule 299.4711(e)(iii)(C) was specifically relied upon in two recent decisions of this Court affirming a trial court's injunction which prevented a landfill operator in county A from receiving waste imported from county B until the amendment of the two counties' solid waste management plans. *Saginaw Co v Sexton Corp of Michigan,* 150 Mich App 677; 389 NW2d 144 (1986), lv pending (Docket No. 78575); *Fort Gratiot Charter Twp v Kettlewell,* 150 Mich App 648; 389 NW2d 468 (1986), lv pending (Docket No. 78573). Plaintiff asserts these cases are controlling. We respectfully disagree.

While the Reids' disposal site is not identified in the Marquette County plan (no plan having yet been finalized in Marquette County), at no place in the record has plaintiff established that the Reids' landfill was not identified in the importing municipalities' (other than Marquette) county plans. Thus, as to importation from East Jordan, Muskegon, Menominee and sources outside the tricounty area other than Marquette (Issue v, *supra*), Rule 299.4711(e)(iii)(C) provides no basis for enjoining importation.[5]

Because plaintiff established that the Reids' landfill was not identified in a Marquette plan, a closer question is involved as to the waste imported from Marquette County (Issue IV, *supra*). Nevertheless, we find *Sexton Corp* and *Kettlewell*

---

[5] Rule 299.4711(e)(iii)(C) requires the site in controversy to be identified *in both* county plans. Contrary to plaintiff's assertion that the Reids' landfill is not identified in the tri-county plan, the proofs disclose that not only was the Reids' site specifically mentioned in the tri-county report, but was also specifically included in the tri-county plan pursuant to an order of the Chippewa Circuit Court.

distinguishable. These cases, unlike the situation in the instant case, involved an actual or perceived loss of the receiving county's planned capacity. The *Sexton* Court, after stating that the purpose of Rule 299.4711(e)(iii)(C) was to insure that the site capacity of the county receiving the waste would be sufficient to accommodate the waste of the importing county for the twenty-year planned period, took proofs which disclosed the importation of solid waste from Bay County into Saginaw County would reduce the planned Saginaw landfill capacity by some forty percent.

> A bench trial was conducted on September 11, 1984. The director of public works for Saginaw County testified that the disposal of an additional 75 tons of solid waste per day in Saginaw County would reduce the county's available landfill capacity from a nine-year to a five-year level. The director further pointed out that if the Bay County facility was allowed to operate at its maximum transfer capacity, plaintiff's overall landfill space would be reduced by as much as 40%.
> The trial court rendered a decision in favor of plaintiff, holding that, although plaintiff's solid waste management plan did not expressly prohibit the disposal in Saginaw County of solid waste from Bay County or any other county, the plan did identify defendant's landfill for a specific and exclusive purpose *and that defendant's activities significantly interfered with the plan adopted by the county and approved by the state.* [150 Mich App 681-682.]

Similarly, the *Kettlewell* Court reasoned that the purpose of the rule was to insure that a plan adopted by one county will not be disrupted by disposal of waste from another county.

Each county is permitted to address local con-

cerns and to adapt its plans to local conditions while at the same time safeguarding parochial decision-making by requiring the plan to be approved for inclusion in the state plan. The rules and the act provide a method whereby a county *can develop a plan which is workable and will not be disrupted by future disposal of waste from sources not accounted for during the planning process.* [150 Mich App 654.]

Plaintiff township, located in St. Clair County, sought an injunction to stop defendants from disposing solid waste from Macomb County. At a four-day trial, testimony disclosed that the Macomb County plan listed five landfill sites outside Macomb County for disposal but did not include plaintiff township site and the St. Clair County plan provided for receipt of St. Clair County waste only. Based on this, the trial court concluded that the clear implication of the plans was that the Kettlewell site was not intended as a location for the depositing of Macomb County waste. Unlike the case before us, no testimony disclosed that disposal of Macomb waste in St. Clair County would not reduce the planned capacity or otherwise prejudice the St. Clair twenty-year plan.

We refuse to extend the rule in *Sexton* and *Kettlewell* to situations where the evidence at trial affirmatively disclosed that importation of waste from another county would not prejudice or compromise the receiving county's twenty-year plan. Nothing in the Solid Waste Management Act specifically precludes the importation of waste from one county to another as long as the waste is deposited in a licensed landfill. While violation of Rule 299.4711(e)(iii)(C) may constitute grounds for an injunction in certain instances, it is not grounds for an injunction where the proofs disclose that the incoming waste (1) does not constitute a

pollution hazard, (2) will not compromise the receiving county's planned landfill capacity, and (3) is being disposed of in reasonable compliance with operating rules of the DNR. The foregoing conditions having been met by defendants' proofs, we find no grounds for reversal.

Affirmed. No costs, a question of public importance being involved.