**BILL KETTLEWELL EXCAVATING, INC., Plaintiff–Appellant,**

v.

**MICHIGAN DEPARTMENT OF NATURAL RESOURCES, David Hales, St. Clair County Health Department, John B. Parsons, St. Clair Metropolitan Planning Commission, Gordon Ruttan, St. Clair Solid Waste Planning Committee, Peg Clute, Defendants–Appellees.**

No. 90–1361.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 29, 1990.

Decided May 1, 1991.

Rehearing and Rehearing En Banc Denied July 16, 1991.

Robert A. Fineman (argued), Daniel P. Perk, Honigman, Miller, Schwartz & Cohn,

Detroit, Mich., David R. Heyboer, Luce, Henderson, Bankson, Heyboer & Lane, Port Huron, Mich., for Bill Kettlewell Excavating, Inc.

Leo H. Friedman, Office of the Atty. Gen. of Mich., James E. Riley (argued), Thomas J. Emery, Raymond O. Howd, Office of the Atty. Gen. Natural Resources Div., Lansing, Mich., for Michigan Dept. of Natural Resources and David Hales.

Lawrence R. Ternan (argued), Margaret B. Kiernan, Beier, Howlett, P.C., Bloomfield Hills, Mich., Robert H. Cleland, County of St. Clair Prosecutor's Office, Port Huron, Mich., for St. Clair County Health Dept., John B. Parsons, St. Clair Metropolitan Planning Com'n, Gordon Ruttan, St. Clair Solid Waste Planning Committee and Peg Clute.

Before NORRIS, Circuit Judge,
WELLFORD, Senior Circuit Judge,* and
FORESTER, District Judge.**

WELLFORD, Senior Circuit Judge.

Plaintiff, Bill Kettlewell Excavating, Inc., d/b/a Fort Gratiot Sanitary Landfill (Kettlewell), has owned and operated a landfill in St. Clair County, Michigan since 1971. In 1988 the stock of Kettlewell was purchased by new owners and is allegedly controlled by out-of-state corporations. The new owners assert that since they bought Kettlewell's stock they need not reapply for a new landfill license, as demanded by the County defendants, and this issue is presently pending in the Michigan Court of Appeals. We need not address this issue in this opinion.

Kettlewell operates its private landfill under a 1987 license issued by the Michigan Department of Natural Resources (MDNR) pursuant to the Michigan Solid Waste Management Act (MSWMA), subsequently amended, and now challenged by plaintiff in the present controversy. Kettlewell seeks to handle and to dispose of solid waste from outside Michigan, claiming that it is no different in kind and char-

acter from in-state solid waste being currently handled at Fort Gratiot Sanitary Landfill.

The MSWMA provides for a state-wide regulatory scheme for disposal of solid waste and delegates much of the responsibility for planning to the individual counties. The MSWMA was amended in late 1988 to provide as follows:

A person shall not accept for disposal solid waste ... that is not generated in the county in which the disposal area is located unless the acceptance of solid waste ... that is not generated in the county is explicitly authorized in the approved county solid waste management plan.

Mich.Stat.Ann. § 13.29(13a), [M.C.L.A. § 299.413a].

In order for a disposal area to serve the disposal needs of another county, state, or country, the service ... must be explicitly authorized in the approved solid waste management plan of the receiving county.

Mich.Stat.Ann. § 13.29(30)(2), [M.C.L.A. § 299.430(2)].

On February 13, 1989, Kettlewell submitted an application to the St. Clair County Solid Waste Planning Committee requesting authorization for disposal of solid waste, including out-of-state waste. In the application Kettlewell agreed to reserve sufficient space to dispose of all solid waste generated within St. Clair County for the next twenty years. Kettlewell's application was denied promptly by defendant Planning Committee.

There seems to be no disagreement that the County Solid Waste Planning Committee is merely an advisory body. The normal next step in approval for a landfill is approval by the County Board of Commissioners and two-thirds of the communities within the county. Once this approval is received final approval must then be obtained under the statutory scheme from the MDNR. The St. Clair County Board of

---

* The Honorable Harry W. Wellford assumed senior status on January 21, 1991.

** The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Commissioners and MDNR have not yet acted on the application in question.

Within two weeks of the disapproval by the Planning Committee, Kettlewell sought declaratory judgment contending unconstitutionality of the amendments under the commerce clause in the district court.[1] The defendants, MDNR, the County Health Department and its Planning Commission, brought a motion to dismiss on jurisdictional grounds which the district court first denied.[2] Subsequently, the district court denied summary judgment to Kettlewell on the merits of the case. 732 F.Supp. 761.

Kettlewell contends that its application involving out-of-state solid waste was denied based on defendants' "policy to ban all out-of-state waste." Kettlewell's Brief at 2. The complaint states that the 1988 amendments to MSWMA impose "an absolute ban on the disposal of out-of-state waste without County approval," and that "MDNR and St. Clair [County] have, by prior legal action, indicated an intention not to permit Kettlewell to dispose of any solid waste originating from outside the State of Michigan at the Fort Gratiot Sanitary Landfill."

In a prior counterclaim filed in a Michigan court in a suit involving these parties, the County defendants stated:

> St. Clair County has prepared a plan pursuant to Act 641 and it has been approved by the DNR Director. This plan, which adequately provides for the disposal of solid refuse within the county, does not include provisions for waste originating outside the county from being disposed of at facilities within the county, except for certain limited specified instances.

The answer of the County defendants conceded that the Planning Committee had decided not to allow disposition of out-of-state waste. The County defendants also indicated that an "update" of the St. Clair County Solid Waste Management Plan was "in the process of being prepared and submitted [to MDNR] for approval." MDNR denied there was any absolute ban on out-of-state waste, but admitted that the present County plan did not permit disposal of solid waste "originating outside of St. Clair County."

Under MSWMA each Michigan county is required to submit a 20–year solid waste management plan to provide for such waste generated in the county, or, under certain conditions, in another Michigan county. Each county is also required to update the plan every five years. The St. Clair County plan was approved by MDNR in 1983, and was, therefore, supposed to be updated in 1988.

An earlier Michigan decision bears upon the actions of MDNR under MSWMA prior to the amendments in controversy and Kettlewell's authority to dispose of solid waste from another Michigan county in St. Clair County. The Michigan Court of Appeals held in *Fort Gratiot Charter Twp. v. Kettlewell*, 150 Mich.App. 648, 389 N.W.2d 468 (1986), that the other Michigan county (Macomb) and St. Clair County *both* had to provide affirmatively for such intercounty transfer of solid waste in their solid waste management plans for Kettlewell to handle Macomb County solid waste in its landfill in St. Clair County. The absence of such affirmative action by St. Clair County was also challenged in that case by Kettlewell as violating its constitutional due process rights. The Michigan court held that there was no due process violation, no unreason-

---

1. Kettlewell has subsequently raised due process contentions.

2. The defendants claimed in that motion that Kettlewell's declaratory judgment action was really a collateral attack on the district court's earlier remand of an earlier controversy to state court, or a defense to the defendants' state court counterclaim, or that no controversy existed between the parties. The district court disagreed finding that Kettlewell was seeking declaratory judgment on the constitutionality of

the MSWMA amendments which had not come into effect at the time of the remand. It noted that no state court action was currently pending and found that Kettlewell's attempt to gain permission to import waste was denied demonstrating that the amendments may have been enforced against Kettlewell and thus Kettlewell's claim was no longer a mere defense to a state court action. The district court noted that its decision would resolve the constitutional issue between the parties.

able classification, and no "taking" of Kettlewell's property under the circumstances. An additional Kettlewell challenge that MSWMA provided inadequate standards for issuance of permits and authority to dispose of out-of-county waste was deemed to be without merit. *See* 389 N.W.2d at 471. *See also County of Saginaw v. John Sexton Corp.,* 150 Mich.App. 677, 389 N.W.2d 144 (1986) (to the same effect as to disposition of waste from one Michigan county to another under MSWMA).

Here the district court found, in substance, that the Michigan statute did not expressly favor in-state entities since out-of-state entities and other Michigan counties were treated equally. It also found that the amendments did not constitute an outright ban against out-of-state waste and that the incidental effects were not clearly excessive compared to the claimed local benefits. The court also found that the county's policy prohibiting all out-of-county waste from being imported was evenhanded and that the benefits of the policy outweighed its burden on interstate commerce so that there was no violation of the commerce clause as applied. Finally, the court dealt with the due process clause allegations by finding that the county's blanket prohibition of out-of-county waste importation obviated the need for guidelines for acceptance under the due process clause. Since the district court provided no relief upon its claim, Kettlewell now appeals.

We review the legal determinations of the district court de novo. We must ascertain, as did the district court, whether the MSWMA amendments represent on their face or as applied

> basically a protectionist measure, or whether [they] can fairly be viewed as [ ] law[s] directed to legitimate local concerns, with effects upon interstate commerce that are only incidental.

*City of Philadelphia v. New Jersey,* 437 U.S. 617, 624, 98 S.Ct. 2531, 2535, 57 L.Ed.2d 475 (1978). If the amendments are simply aimed at economic protectionism, the defendants must hurdle a "virtual[ ] *per se* rule of invalidity" to survive constitutional challenge. *Id.* at 624, 98 S.Ct. at 2535. If, however, the amendments serve a legitimate public interest, and only incidentally burden interstate commerce, the amendments "will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970) (citing *Huron Portland Cement Co. v. City of Detroit,* 362 U.S. 440, 443, 80 S.Ct. 813, 815, 4 L.Ed.2d 852 (1960)). In evaluating the protectionist character of legislation, courts must assess "legislative means as well as legislative ends." *Philadelphia,* 437 U.S. at 626, 98 S.Ct. at 2537.[3]

The basic question in this case, therefore, is whether the MSWMA amendments, facially or as applied, serve an economic protectionist purpose. In *Philadelphia,* the New Jersey statute in question provided that

> [n]o person shall bring into this State any solid or liquid waste which originated or was collected outside the territorial limits of the State, ... until the commissioner [of the State Department of Environmental Protection] shall determine that such action can be permitted without endangering the public health, safety and welfare and has promulgated regulations permitting and regulating the treatment and disposal of such waste in this State.

N.J.Stat.Ann. § 13:11–10 (West Supp.1978) (as cited in *Philadelphia,* 437 U.S. at 618–19, 98 S.Ct. at 2532–33). New Jersey authorities under that law, promulgated regulations effectively banning importation of out-of-state landfills in New Jersey.

The New Jersey statute in *Philadelphia* expressed a purpose of protecting the state's environment through limiting the volume of waste into state landfills. Despite this purpose, the Supreme Court de-

---

**3.** Economic protectionism may be proven either by establishing a statute's discriminatory purpose, *Hunt v. Washington Apple Advertising Comm'n,* 432 U.S. 333, 349–50, 97 S.Ct. 2434, 2444–45, 53 L.Ed.2d 383 (1977) or discriminatory effect, *Philadelphia,* 437 U.S. at 626, 98 S.Ct. at 2536.

termined the law to be discriminatory under the commerce clause:

[I]t does not matter whether the ultimate aim of [the statute] is to reduce the waste disposal costs of New Jersey residents or to save remaining open lands from pollution, for we assume New Jersey has every right to protect its residents' pocketbooks as well as their environment. And it may be assumed as well that New Jersey may pursue those ends by slowing the flow of *all* waste into the State's remaining landfills, even though interstate commerce may incidentally be affected. But whatever New Jersey's ultimate purpose, it may not be accomplished by discriminating against articles of commerce coming from outside the State unless there is some reason, apart from their origin, to treat them differently. Both on its face and in its plain effect, [the statute] violates this principle of nondiscrimination.

437 U.S. at 626–27, 98 S.Ct. at 2537.

With respect to a commerce clause/police power analysis, in *Maine v. Taylor*, 477 U.S. 131, 138, 106 S.Ct. 2440, 2447, 91 L.Ed.2d 110 (1986), the Supreme Court held that " 'once a state law is shown to discriminate against interstate commerce 'either on its face or in practical effect,' the burden falls on the State to demonstrate both that the statute 'serves a legitimate local purpose,' and that this purpose could not be served as well by available nondiscriminatory means." (Citations omitted).[4]

*Maine v. Taylor* involved a Maine law banning importation of certain live baitfish into that state. The Supreme Court upheld the district court's legitimate local purpose finding for the baitfish importation ban. The state had contended that importation involved threats to its ecology through introduction of parasites and non-native species into Maine's waterways. The district court found support for the state's contention. Since there was a legitimate purpose

found for the ban, the Supreme Court then discussed whether there was a less discriminatory alternative to the complete ban. Finding no error in the district court's factual findings, the Supreme Court approved its conclusion that no scientifically-accepted techniques existed for the sampling and inspection of live baitfish. The Supreme Court finally concluded that no less discriminatory alternative to an outright ban existed. 477 U.S. at 147, 106 S.Ct. at 2452.

Kettlewell argues that "in-county, in-state waste is not subject to the Amendments and, thus ... is treated differently than all out-of-state waste." This argument ignores the language of § 13.29(13a) that "[i]n order ... to serve the disposal needs of *another county, state, or country,* [it] ... must be explicitly authorized in the ... plan of the receiving county." (Emphasis added). Thus § 13.29(13a) language places in-county and out-of-county waste in separate categories, but it does not treat out-of-county waste from Michigan any differently than waste from other states.

Under all of the circumstances, we find no error in the conclusion of the district court that:

[T]he MSWMA grants each county discretion in accepting or denying importation of waste from any outside source, including other counties within the State. Although ultimate authority for acceptance of a county's plan resides with a single official under the MSWMA, Mich. Comp.Laws Ann. §§ 299.425 and 299.429, the plaintiff has not alleged that this official has used this authority to reject county plans proposing the importation of out-of-state waste.

Further, we find no error in the district court's ultimate conclusion that "MSWMA imposes only incidental effects upon interstate commerce, and may therefore be upheld" unless clearly excessive as compared

---

4. Although the Supreme Court in *Philadelphia* did not expressly discuss the second factor concerning alternative means, it may have considered this factor when it noted that "it may be assumed ... that New Jersey may pursue [its legislative] ends by slowing the flow of *all* waste into the State's remaining landfills...." 437 U.S. at 626, 98 S.Ct. at 2537 (emphasis in original). Whether "slowing the flow" is equivalent to stopping entirely the flow of solid waste was not discussed.

to local benefits under *Pike.* MSWMA does, indeed, as found by Michigan courts and by the district court, provide a "comprehensive plan for waste disposal, through which appropriate planning for such disposal can result." Thus, we conclude that the attack on the facial constitutionality of the Michigan statute in question must fail.

■ We next examine the contention by plaintiff that the statute, as applied in St. Clair County, is unconstitutional as applied to the denial of the Kettlewell application. The effect of the Planning Commission action was to bar all solid waste importation from outside St. Clair County. The stated goal of St. Clair County's plan was to preserve, protect, and manage its landfills with respect to disposition of the County's own solid waste. This policy treats both out-of-county Michigan solid waste and outside Michigan solid waste equally. If, in fact, it were alleged or proven that all counties in Michigan, pursuant to MSWMA or MDNR direction or policy, banned out-of-state waste, we would be facing a different and difficult problem under *City of Philadelphia v. New Jersey.* Instead, we are now concerned with the policy in one Michigan county, authorized by state statute, which effectually bars importation of solid waste *into* the county. We find no error in the district court's additional holding that the effect of St. Clair County's action was not an unconstitutional imposition on interstate commerce under *Philadelphia* and *Pike.*

We note, moreover, that plaintiff brought this challenge without exhausting its administrative remedies under St. Clair County procedures and under Michigan law. We do not presume that a legitimate challenge to the Planning Committee's action, if arbitrary, unreasonable or illegal, might not be cured by carrying an administrative appeal to the Board of Commissioners and/or MDNR. There is no allegation or showing that Michigan law would not provide an adequate remedy upon appeal or pursuit of a statutory remedy if the Planning Committee action, if supported by the county and MDNR, were baseless, capricious or motivated by an intent to discriminate against interstate commerce. By analogy in a county zoning context, see *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985).

■ Finally, we find no due process violation, nor any unconstitutional taking of Kettlewell's property rights by reason of the county action in controversy. Kettlewell may still utilize its landfill but not for out-of-county waste. It has not demonstrated any lack of procedural notice and opportunity to be heard. County denial of this Kettlewell application does not materially differ from County denial of a license or permit, or of a particular zoning. A disappointed applicant in these situations has no basis to claim a constitutional deprivation unless he pursues available administrative and statutory remedies to cure the error or violation about which he complains.

For the foregoing reasons, we AFFIRM the decision of the district court that no constitutional violation has occurred.