**BILL KETTLEWELL EXCAVATING, INC., d/b/a Fort Gratiot Sanitary Landfill, Plaintiff,**

v.

**MICHIGAN DEPARTMENT OF NATURAL RESOURCES; David Hales, Director of Michigan Department of Natural Resources; St. Clair County Health Department; John B. Parsons, Director of St. Clair County Health Department; St. Clair County Metropolitan Planning Commission, and Gordon Ruttan, Director; St. Clair County Solid Waste Planning Committee and Peg Clute, Chairperson, Defendants.**

No. 89–CV–30015–PH.

United States District Court,
E.D. Michigan, S.D.

March 2, 1990.

Daniel P. Perk, Robert A. Fineman, Honigman, Miller, Detroit, Mich., David R. Heyboer, Luce, Henderson, Port Huron, Mich., for plaintiff.

Frank J. Kelley, Atty. Gen., Thomas J. Emery, Leo H. Friedman, Asst. Attys. Gen., Natural Resources Div., Lansing, Mich., for defendants DNR and Hales.

Robert H. Cleland, St. Clair County Corp. Counsel, Port Huron, Mich., Lawrence R. Ternan, Beier Howlett Ternan Jones Shea & Hafeli, Bloomfield Hills, Mich., for all county defendants.

## MEMORANDUM OPINION AND ORDER

JAMES HARVEY, District Judge.

Currently pending is the plaintiff's motion for summary judgment requesting the following alternative relief: (1) a declaration that Mich.Comp.Laws Ann. §§ 299.-413a and 299.430(2) are unconstitutional to the extent they pertain to disposal of waste generated outside the State of Michigan, along with an injunction prohibiting their enforcement; or (2) a declaration that various St. Clair County governmental entities, defendants herein, unconstitutionally applied these sections in denying the plaintiff's application for a permit to import out-of-state waste to the Fort Gratiot Sanitary Landfill, along with an injunction prohibiting future unconstitutional permit denials.

All defendants have responded, and the Court has heard oral argument. The Court is now prepared to rule.

### I.

The plaintiff raises the due process and commerce clauses of the United States Constitution as bars to the enforcement of certain amendments to the Michigan Solid Waste Management Act (MSWMA), Mich. Comp.Laws Ann. § 299.401 et seq. The challenged amendments provide as follows:

A person shall not accept for disposal solid waste that is not generated in the county in which the disposal area is located unless the acceptance of solid waste that is not generated in the county is explicitly authorized in the approved county solid waste management plan.

\* \* \* \* \* \*

In order for a disposal area to serve the disposal needs of another county, state, or country, the service must be explicitly authorized in the approved solid waste management plan of the receiving county. With regard to intercounty service within Michigan, the service must also be explicitly authorized in the exporting county's solid waste management plan.

Mich.Comp.Laws Ann. §§ 299.413a, 299.-430(2). In February of 1989, the plaintiff applied to the St. Clair County Metropolitan Planning Commission (the Commission) for approval of a plan that would allow the disposal of 1750 tons of waste per day, from sources originating outside of the County, at the plaintiff's private landfill. In rejecting the plaintiff's application, and pursuant to the authority granted in the MSWMA amendments, the Commission's Staff Report notes the County's policy banning importation of any waste, whether generated in other Michigan counties or generated in other states, into the County's landfills. The plaintiff now urges that the MSWMA amendments, by requiring explicit county approval for disposal of out-of-state waste, impermissibly discriminate against interstate commerce by placing the burden on preserving Michigan's landfill space on other states. Alternatively, the plaintiff asserts that the Commission's denial of the plaintiff's application to import out-of-state waste involved an unconstitutional application of the amendments to the plaintiff, in that inadequate criteria exist for evaluating permit applications to satisfy due process.

### II.

Resolution of these issues requires analysis of the several Supreme Court deci-

sions addressing the "dormant" aspects of the commerce clause. More particularly, the Court must ascertain whether the MSWMA amendments represent "basically a protectionist measure, or whether [they] can fairly be viewed as [ ] law[s] directed to legitimate local concerns, with effects upon interstate commerce that are only incidental." *City of Philadelphia v. New Jersey*, 437 U.S. 617, 624, 98 S.Ct. 2531, 2536, 57 L.Ed.2d 475 (1978). If the amendments are simply aimed at economic protectionism, the defendants must hurdle a "virtual[ ] per se rule of invalidity" to survive constitutional challenge. *Id.* at 624, 98 S.Ct. at 2535. If, however, the amendments serve a legitimate public interest, and only incidentally burden interstate commerce, the amendments "will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970), citing *Huron Portland Cement Co. v. City of Detroit*, 362 U.S. 440, 443, 80 S.Ct. 813, 815–16, 4 L.Ed.2d 852 (1960). In evaluating the protectionist character of legislation, courts must assess "legislative means as well as legislative ends." *Philadelphia*, 437 U.S. at 626, 98 S.Ct. at 2537.

The critical question, therefore, is whether the MSWMA amendments, either through their means or their ends, serve an economic protectionist purpose. In *Philadelphia*, the New Jersey statute (ch. 363) provided that

[n]o person shall bring into this State any solid or liquid waste which originated or was collected outside the territorial limits of the State, except garbage to be fed to swine in the State of New Jersey, until the commissioner [of the state Department of Environmental Protection] shall determine that such action can be permitted without endangering the public health, safety and welfare and has promulgated regulations permitting and regulating the treatment and disposal of such waste in this State.

N.J.Stat.Ann. § 13:1I–10 (West Supp.1978). The New Jersey commissioner, acting pursuant to the statute's authority, promulgated regulations banning, with limited exceptions, the importation of out-of-state waste to any of New Jersey's landfills.

The statute expressed its purpose as protecting New Jersey's environment through a limitation on the volume of waste transportable to state landfills. Notwithstanding this apparently legitimate purpose, however, the Supreme Court found the statute discriminatory and violative of the commerce clause:

[I]t does not matter whether the ultimate aim of ch 363 is to reduce the waste disposal costs of New Jersey residents or to save remaining open lands from pollution, for we assume New Jersey has every right to protect its residents' pocketbooks as well as their environment. And it may be assumed as well that New Jersey may pursue those ends by slowing the flow of *all* waste into the State's remaining landfills, even though interstate commerce may incidentally be affected. But whatever New Jersey's ultimate purpose, it may not be accomplished by discriminating against articles of commerce coming from outside the State unless there is some reason, apart from their origin, to treat them differently. Both on its face and in its plain effect, ch 363 violates this principle of nondiscrimination.

437 U.S. at 626, 627, 98 S.Ct. at 2537. Thus, the Supreme Court dictated its general belief concerning the priority of the commerce clause vis-a-vis state police powers: regardless of the legitimacy of the local purpose underlying a statute, such statute will not be upheld if its enforcement requires direct discrimination against interstate commerce.

For every rule, however, there exists an exception. Respecting commerce clause/police power analysis, the exception is illustrated in *Maine v. Taylor*, 477 U.S. 131, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986). There, the Supreme Court held that "once a state law is shown to discriminate against interstate commerce 'either on its face or in its practical effect,' the burden falls on the State to demonstrate both that the statute 'serves a legitimate local purpose,' and that this purpose could not be served as well by

available nondiscriminatory means." *Id.* at 138, 106 S.Ct. at 2447. Although the second factor, concerning alternative means, avoided express mention in *Philadelphia,* it appears the Supreme Court considered this factor when it noted that "it may be assumed that New Jersey may pursue [its legislative] ends by slowing the flow of *all* waste into the State's remaining landfills...." 437 U.S. at 626, 98 S.Ct. at 2537 (emphasis in original). In other words, there existed a less discriminatory alternative that would allow the protection of New Jersey's environment—banning all disposal of waste in the State's landfills.

*Maine v. Taylor* demonstrates application of these factors through the validation of a state law banning importation of certain species of live baitfish into Maine. First, the Supreme Court upheld the district court's finding of a legitimate local purpose for the importation ban. The State contended that such importation presented threats to the State's ecology through the introduction of parasites and non-native species into its waterways. The district court, after hearing evidence on this issue, concurred with the State's contention. Having found a legitimate purpose for the ban, the Supreme Court next addressed the issue of availability of a less discriminatory alternative to the ban. Again, the Supreme Court exhibited deference to the district court's factual findings, and refused to set aside the conclusion that no scientifically-accepted techniques existed for the sampling and inspection of live baitfish. Given this, and given earlier precedent holding that states are not required to develop new and unproven means in order to create nondiscriminatory methods of achieving a legislative goal, the Supreme Court agreed that no less discriminatory alternative to an outright ban existed. 477 U.S. at 147, 106 S.Ct. at 2452. Thus, the statute withstood commerce clause scrutiny.

### III.

■ Application of the foregoing principles to the MSWMA amendments is admittedly difficult. At the outset, the Court must examine whether the MSWMA, either on its face or in its effect, discriminates against interstate commerce, or whether the MSWMA regulates evenhandedly, with only incidental effects on interstate commerce. Determination of a statute's facial validity requires an evaluation of whether the statutory language expresses favorable treatment to in-state entities. Thus, in *Hughes v. Oklahoma,* 441 U.S. 322, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979), a statute that expressly prohibited the transportation of live minnows out of Oklahoma "on its face discriminate[d] against interstate commerce," and was therefore subject to "the strictest scrutiny." *Id.* at 336, 337, 99 S.Ct. at 1736, 1737. The MSWMA suffers from no such defect. Clearly, the requirement that importers appear in a county waste disposal plan applies equally to Michigan counties outside of the county adopting the plan as well as to out-of-state entities. The Court therefore finds that the MSWMA does not discriminate against interstate commerce on its face.

■ Next, the Court must ascertain whether the MSWMA, in practical effect, discriminates against interstate commerce. In this respect, it is important to recognize the functional difference between the New Jersey waste disposal statute at issue in *Philadelphia* and the MSWMA. Unlike the New Jersey law, the MSWMA does not place the authority to issue a blanket preclusion against the importation of all out-of-state waste into one state official's hands. Instead, the MSWMA grants each county discretion in accepting or denying importation of waste from any outside source, including other counties within the State. Although ultimate authority for acceptance of a county's plan resides with a single official under the MSWMA, Mich. Comp.Laws Ann. §§ 299.425 and 299.429, the plaintiff has not alleged that this official has used this authority to reject county plans proposing the importation of out-of-state waste. In this regard the MSWMA does not, through its means, discriminate against interstate commerce in the manner of the New Jersey statute. As implemented, the MSWMA poses no flat prohibition against the importation of out-of-state

waste into Michigan's landfills. Thus, the Court finds that the MSWMA imposes only incidental effects upon interstate commerce, and may therefore be upheld unless the burden imposed "is clearly excessive in relation to the putative local benefits." *Pike*, 397 U.S. at 142, 90 S.Ct. at 847 (citation omitted).

Michigan promulgated the MSWMA as "[a]n act to protect the public health and the environment; to provide for the regulation and management of solid wastes; to prescribe the powers and duties of certain state and local agencies and officials; to prescribe penalties; to make an appropriation; and to repeal certain acts and parts of acts." Act No. 641, Public Acts of 1978. Thus, the MSWMA's putative benefits include the provision of a comprehensive plan for waste disposal, through which appropriate planning for such disposal can result, as well as the protection of the public's health, safety, and welfare. The burden on interstate commerce appears to be the requirement that out-of-state waste generators appear on a county's plan prior to disposal. Again, the plaintiff does not posit that appearance on a county plan, while ostensibly an insubstantial burden, nevertheless is a practical impossibility for any out-of-state waste generator seeking to utilize Michigan's landfills. Without such an allegation, the Court concludes that the incidental effect on interstate commerce imposed by the MSWMA is not clearly excessive in relation to the benefits derived by Michigan from the statute. The Court therefore holds that the MSWMA is not violative of the commerce clause of the United States Constitution.

### IV.

■ The plaintiff alternatively argues that even if the MSWMA is facially constitutional, the defendant St. Clair County governmental entities unconstitutionally applied the MSWMA in denying the plaintiff's permit application. More specifically, the plaintiff urges that the County's stated prohibition against importation of any waste into the County's landfills directly violates the commerce clause.[1]

■ Unquestionably, the County based its rejection of the plaintiff's application for waste disposal on "the County's policy on out-of-county waste," a policy "to ban all out-of-county waste." Plaintiff's Brief, Exhibit B. As the plaintiff correctly notes, this policy provides no guidelines for importation of solid waste into the County; rather, the County, for whatever reason, has determined that importation of such waste is not a desirable activity. The County, in defense, notes first that the policy is even-handed in that it applies to other Michigan counties as well as to out-of-state entities, and second that such policy, as long as it is reflected in the County's waste disposal plan, is consistent with the MSWMA.

Review of applicable case law reveals a single circuit court opinion addressing the fundamental issue posed by the parties. In *Evergreen Waste Systems, Inc. v. Metropolitan Service District*, 820 F.2d 1482 (9th Cir.1987), the court, in evaluating a local ordinance barring importation of all waste into a metropolitan planning area's landfill, held that " 'evenhandedness' requires simply that out-of-state waste be treated no differently from most [in-state] waste."[2] *Id.* at 1484, citing *Washington*

---

1. The Court notes that the plaintiff also appears to assert the fourteenth amendment due process clause in challenging the County's actions, citing *Geo–Tech Industries, Inc., et al. v. Hamrick*, 886 F.2d 662 (4th Cir.1989). *Hamrick*, however, involved a statute that empowered a state official to deny a waste disposal permit because it was "significantly adverse to the public sentiment." *Id.* at 663. Because no criteria existed for determining when a permit became so adverse, the court found an absence of "substantial or rational relationship between the statute's goals [of preserving community spirit and pride] and its means," and thus found the statute violative

of the constitution's due process clause. *Id.* at 666.

The St. Clair County policy suffers no such infirmity. The stated blanket prohibition against waste importation is surely related to the County's goal of preserving and managing its landfill space. The plaintiff cannot, therefore, argue that the policy violates due process.

2. The plaintiff urges that *Evergreen* is of marginal precedential value in resolving the current dispute, in light of the district court's finding that the defendant acted as a market participant in barring importation of waste, and was there-

*State Trades Council v. Spellman,* 684 F.2d 627, 631 (9th Cir.1982), cert. denied, 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983). Indisputably, St. Clair County's challenged policy treats most in-state waste in the same manner as out-of-state solid waste by prohibiting the importation of either into the county. The policy is therefore subject to the balancing test developed in *Pike, supra.*

St. Clair County's policy serves a legitimate local purpose by extending the useful lives of the County's landfills. Yet, as in *Evergreen,* the parties' positions conflict concerning whether the policy's burden on interstate commerce "is clearly excessive in relation to the putative local benefits...." *Pike,* 397 U.S. at 142, 90 S.Ct. at 847. *Evergreen* found that the availability of alternative landfill sites in Oregon evidenced the "minimal burden" imposed upon interstate commerce by the challenged local ordinance. 820 F.2d at 1485. Similarly, in the present case, the plaintiff does not allege that, as a result of St. Clair County's policy, disposition of out-of-state waste in Michigan is a practical impossibility. The Court concludes, therefore, that the County's policy minimally burdens interstate commerce. Weighed against the local benefits attributable to the challenged policy, the provision of a structured plan for disposal of the County's waste, the Court finds that the policy is a valid exercise of the County's police power.

### V.

Based upon the preceding, the Court DENIES the plaintiff's request for a declaratory judgment holding the 1988 amendments to the Michigan Solid Waste Management Act violative of the commerce clause of the United States Constitution, and therefore DENIES the plaintiff's request for an injunction prohibiting the amendments' enforcement; and DENIES the plaintiff's request for a declaratory

judgment holding the defendant St. Clair County governmental entities' application of the Michigan Solid Waste Management Act in denying the plaintiff's permit application unconstitutional, and therefore DENIES the plaintiff's request for an injunction prohibiting future such applications of the MSWMA.

IT IS SO ORDERED.

---

fore exempt from commerce clause coverage. *Evergreen Waste Systems, Inc. v. Metropolitan Service District,* 643 F.Supp. 127, 131 (D.Or. 1986). Yet, the Ninth Circuit unquestionably affirmed the district court by finding that the ordinance regulated evenhandedly, and that its burdens on interstate commerce were not clearly excessive in relation to the putative local benefits. Nowhere in the appellate decision does the court mention the market participant doctrine.